**14 So.2d 917**

**STATE v. DOUCET.**

No. 36740.

June 21, 1943.

Rehearing Denied July 13, 1943.

See, also, 199 La. 276, 5 So.2d 894; 202 La. 1074, 13 So.2d 353.

Eugene Stanley, Atty. Gen., Seth Lewis, Dist. Atty., of Opelousas, and R. H. Lee, Sp. Asst. Atty. Gen., for the State.

S. Allen Bordelon, of Marksville, and Lessley P. Gardiner, of Opelousas, for appellee.

HAMITER, Justice.

This is one of five cases, presently before us for consideration, in which the former Sheriff of St. Landry Parish, Daly J. Doucet, is charged with having committed the statutory crime of embezzlement of public funds. The others are numbered 36741, 36742, 36743, and 36744, on the docket of this court. 204 La. 95, 96, 97, 98, 14 So.2d 922, 923. All are on appeals perfected by the state from decrees of the district court sustaining demurrers to the several bills of indictment and informations and discharging defendant; and they were consolidated here for the purpose of argument.

The prosecutions are predicated on the provisions of Sections 903 and 904 of the Revised Statutes (Articles 912 and 913 of Dart's Criminal Statutes) reading:

"Article 912. Any officer of this state, or any other person, who shall convert to his own use, in any way whatever, or shall use, by way of investment in any kind of property or merchandise, or shall loan, with or without interest, or use in any other manner than as directed by law, any portion of public money which he is authorized to collect, or which may be entrusted to safe keeping or disbursement, or for any other purpose, shall be guilty of an embezzlement of the same.

"The neglect or refusal to pay over, on demand, any public money in his hands, in the manner required by law, shall be prima facie evidence of its conversion and embezzlement; and any officer or other person, and all persons advising, or knowingly and wilfully participating in such embezzlement shall, upon conviction thereof, pay

a fine equal to the amount of money embezzled, besides restoring the same; and shall be imprisoned at hard labor, not less than six months, nor more than five years. (R. S. § 903).

"Article 913. The provisions and penalties of the preceding section shall extend to all officers or other persons, their aiders and abettors, who shall embezzle the funds belonging to any parish or incorporated city, with the collection, safe keeping, or disbursement of which they may be intrusted or charged. (R.S. § 904)."

It is charged in the indictments and informations that defendant, while acting in his official capacity as sheriff and ex-officio tax collector of St. Landry Parish, did receive and take into his possession and have intrusted to his care and keeping various sums of public money; that out of such funds he did feloniously and wrongfully convert to his own use and otherwise embezzle specifically named sums; and that said sums were used in a manner other than as directed by law.

In response to defendant's motions for bills of particulars, the district attorney filed answers stating that the sums embezzled were from the Sheriff's Salary Fund.

Some of the money allegedly embezzled, so the indictments and informations show, was represented by checks issued by the parish treasurer and bear the endorsements of the respective payees, their issuance being pursuant to warrants drawn by defendant; while another portion was in the form of the treasurer's check made payable to defendant and by him endorsed, given to

pay for the transportation of prisoners and insane persons as requested in his warrant.

Out of the Sheriff's Salary Fund, the maximum authorized amount of which is fixed by statute, are paid the salary of the sheriff and ex-officio tax collector and all of the expenses necessary for the operation of his office. The fund is made up of commissions on taxes collected by that official and also of certain fees and charges allowed him by law.

At the time that defendant committed the alleged crimes, this being in the year 1937, a sheriff and ex-officio tax collector was required to turn over to the parish treasurer the deducted commissions from taxes collected and the mentioned fees and charges received by him. All of this money was then deposited by the treasurer in the parish fiscal agent bank to be accounted for by him under the head of a "Sheriff's Salary Fund". Respecting withdrawals from this fund, Section 3 of Act No. 156 of 1920, as amended by Act No. 76 of 1936, provided:

"* * * The Sheriff and Ex-Officio Tax Collector shall draw his salary monthly on his own warrant; and shall monthly issue to employees and deputies orders on the Parish Treasurer for the amount due them. For claims within the allowance above fixed, and to be charged to said allowance, he shall collect on his own warrant; it being the intention that the Treasurer's books shall show the total receipts of the office of Sheriff and Ex-Officio Tax Collector in civil and criminal matters and all other fees, allowances, charges and commissions, and the disbursement to the

Sheriff and Ex-Officio Tax Collector, including the salary and all other expenses of the office, and also including the reimbursements of actual expenses paid out as hereinafter allowed, * * *."

As to the amounts allowed or authorized to be expended, the law provided:

"In the event that the said amounts or any of them exceed the necessities of any one of said Sheriffs and Ex-officio Tax Collectors in the efficient performance of his duties as aforesaid, the excess shall not be drawn or otherwise expended by the said officials, but remain in the Parish Treasury. * * *" Section 2 of Act No. 156 of 1920, as amended by Act No. 83 of 1932.

It is well said in State v. Smith et al., 194 La. 1015, 195 So. 523, that the crime of embezzlement, with which defendant is charged, "is a statutory and not a common law offense, and the indictments charging people under the statutes of the various states must, of course, be governed by the provisions of these statutes, which vary in the different states. It can be said, however, that, generally speaking, embezzlement is a fraudulent and felonious appropriation of another's property by the person to whom it has been entrusted or into whose hands it has lawfully come. The gist of the offense is a breach of trust. The essence of the offense is the conversion of the property. In other words, the crime of embezzlement cannot be committed until the owner has been deprived of his property by its conversion to the use of the person to whom it has been entrusted."

Under Sections 903 and 904 of the Revised Statutes (Dart's Criminal Statutes Articles 912 and 913), above quoted, an officer of the state or any other person is guilty of embezzlement when he converts to his own use, or uses in any other manner than as directed by law, any portion of public money which is intrusted to his safe keeping or disbursement. Defendant in no manner disputes this statement of the law. But he insists that "under the law, the Sheriff's Salary Fund and the sums therein deposited were not, at the time alleged, in the custody or control of, or disbursable by the sheriff and that no fiduciary relationship, necessary to sustain a charge of embezzlement, did, or could have existed between the sheriff and the state, parish, or taxing body."

This contention of defendant represents the principal defense urged under the demurrers; and it poses the question: "Was the Sheriff's Salary Fund intrusted to defendant's disbursement and in his legal possession as contemplated by our statutory law?"

Concededly, defendant did not have physical custody of the money. As before stated, it was turned over to the treasurer and deposited in the parish fiscal agent bank, all in accordance with the requirements of law. But for all practical purposes the sheriff was the legal possessor. He had and exercised exclusive control of it. The treasurer was without right to make payments from or to debit that fund except upon an order from the sheriff; but upon the presentation of the sheriff's warrant, regular on its face, a duty devolved upon the treasurer to pay it, provided there were funds in the account sufficient therefor. No approval of any other officer was required for the disbursement.

We are not unmindful of the provision of the second paragraph of Section 903 of the Revised Statutes (Dart's Criminal Statutes Article 912) reading: "The neglect or refusal to pay over, on demand, any public money *in his hands,* in the manner required by law, shall be prima facie evidence of its conversion and embezzlement * * *". Obviously the words "in his hands" are not to be accepted literally, particularly in view of our modern system of banking that is utilized by all public officials; they can only mean in his legal possession or under his control, either physically or constructively.

If, for the sake of argument, an official deposits in a bank to his own credit public funds given to him for the purpose of paying certain office expenses, and thereafter he draws checks on the accounts in settlement of personal obligations, it could not be gainsaid that his acts, in that case, would constitute embezzlement. We can see no real difference from either a practical or a legal standpoint, between the supposed situation and the one presented by the instant controversy. In each physical possession of the public funds when disbursed is not in the official; yet in both he has complete control of the money made accessible to him for the payment of public obligations.

Interesting is the following extract found in 29 C.J.S. verbo Embezzlement, § 9:

"Broadly speaking, accused must have lawful or rightful possession of the property alleged to have been embezzled. However, it is not necessary that he should have actual physical possession, nor that he should have exclusive possession thereof, but it is sufficient if he has constructive possession, and under some statutes, it is sufficient if he has access to, or control of, the money or property."

██ It is, therefore, our conclusion that the above stated question must be answered in the affirmative. In other words, the Sheriff's Salary Fund was in the legal possession of the defendant and intrusted to his disbursement, as the statutory law contemplates.

██ It is further contended by defendant, under the demurrers, that each count of the several indictments and informations charges more than one offense, he being accused of violating both Section 903 and Section 904 of the Revised Statutes (Articles 912 and 913 of Dart's Criminal Statutes). This same contention was made by the defendant in the case of State v. Manouvrier, 203 La. 541, 14 So.2d 439, decided May 17, 1943; and therein we held it to be without merit.

Therefore, for the above reasons the judgment appealed from in this cause is reversed and set aside, defendant's demurrer is now overruled and the case is remanded for further proceedings according to law.

HIGGINS, J., concurs in part and dissents in part and assigns reasons.

FOURNET, J., dissents and assigns reasons.

PONDER, J., dissents.

FOURNET, Justice (dissenting).

The defendant, in these cases, is under five charges of having, in his official capacity, as the sheriff and ex-officio tax collector of St. Landry parish, embezzled various sums from the "Sheriff's Salary Fund".

Prior to the adoption of Act No. 17 of 1938, when these crimes are alleged to have been committed, the "Sheriff's Salary Fund", like the "Assessor's Salary and Expense Fund", was not in the possession of the sheriff or intrusted to him for safekeeping but was, under Act No. 156 of 1920, as amended by Act No. 86 of 1924, Act No. 83 of 1932, and Act No. 35 of the Second Extra Session of 1934, "turned over to the *Parish Treasurer*, to be accounted for by the said *Parish Treasurer* under the head of a 'Sheriff's Salary Fund.'" (Italics mine.)

It therefore follows that the views expressed in my dissenting opinion in the case of State of Louisiana v. Lennie Savoy, 204 La. 103, 14 So.2d 925, this day handed down, are controlling in these cases also and for those reasons I respectfully dissent.

HIGGINS, Justice (concurring in part and dissenting in part).

In order to constitute the crime of embezzlement, it is elementary that the accused should have lawful custody or pos-

session of the funds converted or appropriated to his own use. Embezzlement is a statutory offense and the legislative definition thereof requires that the defendant be in legal possession of the money, which he embezzles. If an accused obtained custody or possession of the funds through larceny or by false pretenses, he would not have legal custody of the money and could not be charged with embezzlement thereof. He could be punished for committing either the crime of larceny or the crime of obtaining money by false pretenses, but not embezzlement. Since the crime of embezzlement is purely statutory, it is conceded that the Legislature has the right and authority to change the definition of the offense by eliminating the requirement that the defendant be in lawful custody of the funds or money converted to his own use. The issue involved in this case as to the legality of the indictment necessitates the court determining whether or not the statute under which the defendant is charged requires that he be in lawful custody or possession of the money.

Article 912 of the Code of Criminal Procedure (R.S. § 903) reads:

"Embezzlement of public money.—Any officer of this state, or any other person, who shall convert to his own use, in any way whatever, or shall use, by way of investment in any kind of property or merchandise, or shall loan, with or without interest, or use in any other manner than as directed by law, *any portion of public money which he is authorized to collect, or which may be entrusted to safe keeping*

*on disbursement, on for any other purpose,* shall be guilty of an embezzlement of the same.

"The neglect or refusal to pay over, on demand, *any public money in his hands,* in the manner required by law, shall be prima facie evidence of its conversion and embezzlement; and any officer or other person, and all persons advising, or knowingly and wilfully participating in such embezzlement shall, upon conviction thereof, pay a fine equal to the amount of money embezzled, besides restoring the same; and shall be imprisoned at hard labor, not less than six months, nor more than five years." (Italics ours.)

It will be observed that the officer or the person may be charged with embezzlement under the statute if he converts to his own use "any portion of public money which he is *authorized to collect,* or which may be *entrusted to safe keeping or disbursement,* or for any other purpose * * *." (Italics ours.) Necessarily, if the officer or person authorized to collect public money does not in fact collect it, he would not have either the physical or legal possession or custody thereof, and could not be charged with embezzlement of it. If he did collect the money, then he would have the legal possession and custody of the funds because he is authorized to collect it. It is obvious that if public money is "entrusted" to an officer or a person for safe keeping, or "entrusted" to him for disbursement, or "entrusted" to him for any other purpose, he necessarily has the legal custody and possession of the funds. If he has "any pub-

lic money in his hands" and neglects or refuses to pay it over on demand "in the manner required by law", his neglect or refusal to do so shall be prima facie evidence of conversion and embezzlement. Therefore, the conclusion is inescapable that the statute requires the officer or public official or person to have lawfully in his hands, or possession, or custody, public money, before he can be charged under the statute with embezzlement. The statute is free from any ambiguity or uncertainty in that respect, but even if it were not, since this is a criminal statute, it would have to be strictly construed in favor of the accused.

While the respective indictments charge the defendant with separate and distinct acts of embezzlement, the facts recited in the State's answers to the defendant's bills of particulars show that, in certain instances, he did have lawfully in his hands, possession or custody of certain public money, but, in other instances, he did not have the public money in his hands, possession or custody, because it was paid direct through checks by the Parish Treasurer to the creditor. In other instances, it appears that the money was obtained by alleged misrepresentations or fraudulent means. Consequently, it appears that in these transactions the State's proof would not bring those particular counts of the indictments within the provisions of the statute. The facts recited in the answers to the bills of particulars tend to show that these checks given to the creditor in payment of the alleged indebtedness were to cover the defendant's personal obligations, or that public money was obtained by defendant through spurious bills. If this be true, the public funds would have been unlawfully diverted from public to private purposes through the misrepresentation of the defendant that the debts were public ones. This, if proven, would constitute the offense of obtaining money by false pretense but since the fundamental requirement of the statute is that the defendant have, lawfully, in his hands, in his possession or custody, the public money and convert it to his own use and the statements of facts in the answers to the bills of particulars show that he did not have such possession or custody thereof, the counts in the indictments predicated on those transactions would be subject to the motion to quash them.

The error in the prevailing opinion, as I see it, is that it is stated that, as the defendant has the right to draw against certain parish funds appropriated and dedicated for certain public purposes, this authority is equivalent in legal contemplation to possession and custody of it. It could not be successfully argued that the defendant had physically, in his hands, possession and custody, the public money in question, because the statements of facts contained in the answers to the bills of particulars conclusively show that this was not the case.

The fiscal law of the State places in the custody of the Parish Treasurer the public money which the defendant has the authority to draw against for the purpose of paying certain public legal expenses, obligations or debts. The fiscal law also requires the Parish Treasurer to place the

public monies in a fiscal agent bank, which has qualified as such under the State statutes. Since the public monies against which the defendant had the right to draw, in order to liquidate certain legal public expenses, obligations, or debts, of the Parish, were under the express provisions of the fiscal laws of the State in the custody and possession of the Parish Treasurer, it is difficult to understand how it could be said that those same public funds or monies were likewise in the hands, possession, and custody of the sheriff at the same time. The public funds or monies were by the express provisions of the fiscal laws of the State in the custody and possession of the Parish Treasurer and, therefore, could not either physically or legally be in the hands, possession, or custody of the defendant. Now, if he lawfully obtained possession of such public money and converted it to his own personal use instead of public purposes, he would be subject to a charge of embezzlement. If he, through false pretenses, obtained possession of public money and used it for his own personal purposes, he could be charged with obtaining money by false pretenses, but not with embezzlement.

·It is my opinion that wherever the counts in the indictments supplemented by the answers to the bills of particulars show that the defendant had public monies or funds lawfully in his hands, possession, or custody, those are legal counts in the indictment for embezzlement, but where the counts of the indictments supplemented by the answers to the bills of particulars show that in certain transactions the defendant did not have in his hands, pos-

session, or custody the public funds or monies, or illegally obtained possession or custody of public monies by false pretenses, those counts ·of the indictments are fatally defective and-do not allege the crime of embezzlement within the provisions of the statute.

The State's attorneys argue that in such latter instances the trial judge should have afforded them the opportunity to amend, so as to make the inconsistent allegations of fact in those counts of the indictment conform with the statement of facts contained in the answer to the bill of particulars.

The record does not show that timely request for such amendment was made by the State even if it had been entitled to that consideration. It appears that the State maintained that the indictment was valid and legal in all respects for the crime of embezzlement. If the State had any right to have the indictment amended, it should have sought that relief by proper and timely application to the trial judge.

It is contended by the State that as the verdict of guilty of obtaining money by false pretense would be responsive to an indictment for embezzlement those counts of the indictment supplemented by the answers to the ·bills of particulars showing that the defendant did not have lawful possession and custody of the public money alleged to have been embezzled should not be quashed. The error in this statement is that the law requires a valid indictment of embezzlement before the verdict of a jury finding the defendant guilty of obtaining money by false pretense would

be responsive. In short, the verdict would be valid because the indictment was valid, but if the indictment is invalid, then it would be legally incapable of supporting a valid verdict.

In the instant case, from the facts set forth in the answers to the bills of particulars there are certain counts in the indictment which do not charge the crime of embezzlement for the reason that the State admits that in the transactions covered by those counts, the sheriff did not have lawfully in his hands, custody, or possession of the public monies or funds in question. Therefore, these counts of the indictment being legally defective in charging the offense of embezzlement are legally incapable of supporting a valid verdict for obtaining money by false pretense.

For the foregoing reasons, I concur in part and dissent in part from the main opinion, as above explained.

Eugene Stanley, Atty. Gen., Seth Lewis, Dist. Atty., of Opelousas, and R. H. Lee, Sp. Asst. Atty. Gen., for the State.

S. Allen Bordelon, of Marksville, and Lessley P. Gardiner, of Opelousas, for appellee.

HAMITER, Justice.

For the reasons assigned in 204 La. 79, 14 So.2d 917, which was to day decided, the judgment appealed from is reversed and set aside, defendant's demurrer is now overruled, and the case is remanded for further proceedings according to law.

HIGGINS, J., concurs in part and dissents in part and assigns reasons. See 204 La. 88, 14 So.2d 920.

FOURNET, J., dissents and assigns reasons. See 204 La. 88, 14 So.2d 920.

PONDER, J., dissents.

---

**14 So.2d 922**

**STATE of Louisiana v. Daly J. DOUCET.**

No. 36741.

June 21, 1943.

Rehearing Denied July 13, 1943.

---

**14 So.2d 923**

**STATE of Louisiana v. Daly J. DOUCET.**

No. 36742.

June 21, 1943.

Rehearing Denied July 13, 1943.