No. 36,014

THE STATE OF KANSAS, *Appellant,* v. LEONARD W. JAMES, *Appellee.*

(148 P. 2d 642)

Opinion filed December 11, 1943.

*Braden C. Johnston,* assistant attorney general, and *Willis K. Dillenberger,* assistant county attorney, argued the cause, and *A. B. Mitchell,* attorney general, and *George F. Burton,* county attorney, were on the briefs for the appellant.

*Mark Gillin,* of Parsons, argued the cause for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This appeal presents for review a ruling of the trial court in the preliminary stage of a prosecution for grand larceny for the alleged theft of a pick-up motor truck. When the jury

was empaneled and the prosecuting attorney had made his opening statement, counsel for defendant moved for judgment on the ground that the opening statement showed that defendant was not guilty of grand larceny, but if guilty of anything it was embezzlement. The trial court took the motion under advisement until the testimony of the complaining witness was received.

The jury were temporarily excused, and James Francisco, the prosecuting witness and owner of the pick-up truck, was called as a witness. His testimony was briefly to this effect:

Francisco was a Labette county farmer. His family were temporarily sojourning in Joplin, Mo. While returning from a visit to his family Francisco gave defendant a ride, and then learned that defendant was looking for work. Francisco told him he could give him work and took him to his farm home, and set him to work at whatever there was to do, including the mowing of weeds. A few days later, on July 18, 1942, defendant was mowing weeds about the farm, and Francisco was plowing in a field remote from the house. At noon Francisco came in from the field and he and defendant ate lunch together. After lunch Francisco and defendant got into Francisco's pick-up truck and rode in it to the back field where Francisco was to resume plowing. Defendant then drove the truck back to the house. Francisco's testimony, in part, reads:

"Q. Now, he accompanied you from the house over to the field, is that right? . . . A. Yes. I drove the car, and he came along to bring the car back to the house.

"Q. Did he bring the car back to the house? A. Yes.

"Q. Now, then, what, if anything, did you say to him when you alighted from the car before he left for the house? A. I don't recall saying anything at that time, only he did know he was to go back to mowing weeds, because he had been mowing weeds that morning, and that was about 1:15 in the afternoon.

"Q. Had you told him to do that? A. I had told him to mow the weeds, yes.

. . . . . . . . . . . . .

"Q. That was your instructions to him? A. Yes, sir."

Instead of renewing his task of mowing weeds after driving the truck back to the house, defendant entered the house, changed his clothes, stole some clothing belonging to Francisco's son, stole a .22 rifle, stole ten dollars in pennies and took the truck and disappeared. When Francisco came to the house that evening and found defendant and the truck missing he reported the fact to the county authorities. Sometime the same afternoon defendant had a collision

accident with the truck over in the neighboring county of Wilson. The sheriff of Wilson county found the truck which was damaged to the extent it could not be operated. Defendant told the sheriff he was a son of Francisco, and the officer let him go. Sometime later defendant was located in Texas and brought back to Labette county to stand trial.

When the trial court had heard Francisco's testimony in detail, it inquired if the state was satisfied with its accuracy and truth, and the prosecutor responded in the affirmative. Then the trial court inquired of counsel for defendant if he was renewing his motion for judgment on the prosecutor's opening statement, and the latter also answered affirmatively. The trial court then called the jury and discharged it, on the express ground that the facts adduced in the prosecutor's opening statement and the testimony of the prosecuting witness showed that there was no basis for a prosecution of defendant for grand larceny, but for embezzlement. The trial court also ordered defendant discharged from custody on the crime charged in the information, but directed the sheriff to hold him until the county attorney should determine what further or other prosecution should be instituted against defendant.

The state appeals, contending that neither in fact nor in law did the testimony of Francisco, the prosecuting witness, fail in any particular to show the essential elements which constitute the crime of grand larceny, and that in neither respect did that testimony (or the prosecuting attorney's opening statement) show facts constituting the crime of embezzlement. The pertinent provisions of the crimes act read:

"*Grand Larceny.* Every person who shall be convicted of feloniously stealing, taking or carrying away . . . any automobile, or motor vehicle, . . . belonging to another, shall be deemed guilty of grand larceny." (G. S. 1935, 21-533.)

"*Embezzlement of . . . property.* Any . . . employee, . . . or servant of any private person, . . . who shall embezzle or convert to his own use, or shall take . . . with intent to convert to his own use, without the assent of his employer, any . . . goods . . . or effects whatsoever, belonging to any such person, . . . which shall have come into his possession or under his care by virtue of such employment, . . . shall upon conviction thereof be punished in the manner prescribed by law for stealing property of the kind or value of the articles so embezzled, . . ." G. S. 1935, 21-545.)

Larceny was a crime at common law (32 Am. Jur. 882) and it

would be superfluous to undertake a dissertation on its meaning. Embezzlement at common law was not a crime but merely a tort against the injured party. (18 Am. Jur. 571; 87 A. S. R. 19 *et seq.*) Its status as a crime is modern and purely statutory. While larceny and embezzlement are distinct offenses and so denounced in our crimes act, they are measurably akin to each other, but there are distinguishing characteristics in each. Thus in larceny the element of *trespass* is inherent in its commission while in embezzlement *possession* of the *res* is obtained for a lawful purpose but which the wrongdoer later perverts to an unlawful use or purpose of his own. In 32 Am. Jur. 891, 892, it is said:

"Larceny and embezzlement are generally recognized as distinct and separate crimes, although the two offenses have much in common, and the distinction between them has been broken down in many jurisdictions by statutes which classify acts constituting embezzlement as well as those constituting larceny under the one head of larceny. Apart from such statutes, however, and at common law, the elements of trespass, or fraud equivalent thereto, and of felonious intent on the part of the taker at the time he obtains possession of the goods distinguish larceny, in which possession of another's personal property is unlawfully taken and retained, from embezzlement, which consists in the fraudulent and felonious appropriation of another's goods by one to whom possession of them has been entrusted, or who has acquired such possession in some other lawful manner, and includes no elements of trespass or of criminal intent existing at the time possession is acquired. . . . The historical basis for the distinction lies in the fact that embezzlement is a purely statutory offense created in order that those guilty of fraudulently misappropriating the goods of others might not escape punishment because their acts did not amount to larceny under the technical rules of the common law."

The courts have generally drawn an important distinction based upon the wrongdoer's original relation to the *res*. Thus where the accused has the mere custody of the property and the legal possession is still in the owner, if the wrongdoer makes away with the property with intent to deprive the owner of it permanently his offense is larceny; whereas if lawful possession is conferred on the wrongdoer as where property is entrusted to a bailee or trustee, a later conversion to his own use by the wrongdoer is embezzlement—unless at the time possession is conferred on him he already has formed the wicked intent to convert it to his own use, in which case the offense is classified as larceny. On this point, in 32 Am. Jur. 893, it is said:

"The character and nature of the crime depend on the intention of the parties. The intention of the owner not to part with his property when re-

linquishing possession is, in this class of cases, the gist and essence of the offense of larceny and the vital point on which the crime hinges and is to be determined."

And at pages 958-961 in the same work it is said:

"The rule was laid down that where one having only the bare charge or custody of property for the owner converts it animo furandi, he commits a trespass and is guilty of larceny, the possession, in judgment of law, remaining in the owner until the conversion. This is the rule at common law and under statutes declaratory of the common law. Conversely, except in cases where possession has been obtained by fraud or trick, or with the felonious intent then existing to convert the property to his own use, one having not merely the custody of personal property belonging to another, but the legal possession thereof, cannot generally be held guilty of larceny at common law or under a statute declaratory thereof, although he may be guilty of some statutory offense such as embezzlement.

.  .  .  .  .  .  .  .  .  .  .  .  .

"What amounts to possession and what to mere custody within the meaning of these rules probably cannot be determined according to any settled formula, but the question in any particular case must depend largely upon the capacity in which the accused was given access to or dominion over the property taken, and upon the powers or duties which the owner gave or imposed upon him with respect thereto. For example, one to whom property is delivered by the owner for some limited, special or temporary purpose may be regarded as having its custody only, and as capable of committing larceny thereof. Hence, if the owner gives his property to another to take to the owner's house, and such other person wrongfully sells it, he is guilty of larceny, . . ."

In 2 Wharton's Criminal Law, 12th ed., sec. 1197, it is said:

"If a servant or other agent who has merely the care and oversight of the goods of his master—as the butler of plate, a messenger or runner of money or goods, a hostler of horses, the shepherd of sheep, and the like—convert such goods to his own use, without his master's consent, this is a larceny at common law; because the goods at the time they are taken, are deemed in law to be in the possession of the master—the possession of the servant in such a case being the possession of the master. The same rule is applicable to all cases in which a person to whom goods are given for a particular purpose (as the agent of another) has bare possession. . . . Where the defendant, who was carter to the prosecutor, went away with and disposed of his master's cart, the larceny was held complete; and so where the defendant, a porter to the prosecutor, was sent by his master to deliver goods to a customer, and, instead of doing so, sold them. Where a person employed to drive cattle sells them, it is larceny, and so where a lighterman embezzles corn he was sent to land from a vessel."

See, also, annotation in 146 A. L. R. 529 et seq., to a recent Missouri case (State v. La France, 165 S. W. 2d 624), where the distinc-

tion is drawn between a wrongdoer's mere custody of a chattel and the legal possession of it, in respect to the nature of the wrongdoer's offense when he deprives the owner of it permanently for some use or purpose of his own.

This distinction between mere physical custody and legal possession of property has been recognized in our own reports where the question of larceny or embezzlement was involved. In *State v. Walker*, 65 Kan. 92, 68 Pac. 1095, where defendant was convicted of grand larceny for the theft of money which defendant received from its owner for the purpose of being sent away by United States mail but which defendant kept with intent to convert it to his own use, this court held:

"One person may have the legal possession of goods of which another, acting for him, may have the mere physical custody, and, in such case, the latter may be guilty of larceny from the former if he keep the goods against the possessor's will with intent to convert them to his own use." (Syl. ¶ 3.)

In the opinion it was said:

"It is true that larceny cannot be committed except by a wrongful assumption of the possession of another's goods. However, the possession of which a thief deprives an owner does not mean, necessarily, the manual control or dominion of the property stolen. There is a difference between possession and custody. One may have what the law esteems the possession of property, while another has its custody." (p. 95)

In 125 A. L. R. 371, it is said:

"Where personal property belonging to the master or employer is feloniously converted by a servant or employee having at the time a mere custody of the property, as distinguished from the legal possession thereof, the offense is generally held to be larceny."

See, also, *Tripp v. United States Fire Ins. Co.*, 141 Kan. 897, 44 P. 2d 236; and our early case of *State v. Woodruff*, 47 Kan. 151, 27 Pac. 842, 27 A. S. R. 285.

With the foregoing rules of law in mind, it should be clear that the prosecuting attorney's opening statement and the pertinent facts detailed in the sworn testimony of the prosecuting witness indicated the commission of the offense of grand larceny as charged in the information, not that of embezzlement. Defendant had been given the bare custody of the truck to drive it back to the house. His custody of the truck, never amounting to legal possession, terminated when he took it to the house as his employer directed him to do. What he did afterwards, about changing his clothes, stealing some other clothing, some money and a rifle, and driving off with

the truck constituted an entirely new and independent adventure, in no way related to the purpose for which his employer gave him the bare custody of the truck. It was clearly by unlawful trespass that he appropriated the truck to his own use with the intent to deprive the owner of it. His offense had none of the elements—none of the distinctive earmarks—of embezzlement. Of course he is not being prosecuted for the theft of clothing, or money, or the rifle. Here those matters are merely evidentiary incidents to prove, if proof were needed, that defendant was off on the criminal adventure of stealing the farmer's truck, not on any business or employment of his master, when he drove the truck out of the farm yard and disappeared with it.

It follows that the judgment of the district court was erroneous, and the cause must be remanded with instructions to set aside its judgment, and to proceed with the cause as in an ordinary criminal case where a mistrial has occurred through no fault of the state. It is so ordered.