STATE v. PAUL E. HAYNES.

80 N. W. (2d) 859.

February 1, 1957—No. 36,906.

*Harry H. Peterson* and *Bang, Nierengarten & Hoversten,* for appellant.

*Miles Lord,* Attorney General, *Charles E. Houston,* Solicitor General, and *Wallace C. Sieh,* County Attorney, for respondent.

DELL, CHIEF JUDGE.

Defendant was convicted of the crime of grand larceny in the second degree and appeals from the judgment of conviction.

The defendant had been engaged in an accounting and auditing business in the city of Austin since 1947. As a part of this business he prepared Federal and state income tax returns. The normal procedure was for the defendant to prepare the income tax form himself from information supplied by the taxpayer. One of his employees—there were on an average five in the office with six to eight girl replacements—would then type the return. The taxpayer either would take the original and a copy of the return and make remittance to the tax collector himself, or he would leave the original and the amount of the tax owing with one of the defendant's

employees. In the latter case, the money would supposedly be put in an envelope with the original return and placed in a drawer. All of the employees in the office were authorized to receive money in this manner, and they all had access to the drawer where the money was kept. Every two or three weeks the money would be deposited in the defendant's checking account by one of his employees. The defendant, his wife, and his daughter were authorized to draw checks on this account. After 15 or 20 returns had been accumulated, the defendant would write his personal check for each individual return, and the checks and returns would then be mailed by an employee to the proper collector. All of the defendant's expenditures, both personal and business, were made from this account.

In January 1953, the complaining witness, Harold Miller, and his wife went to the defendant's office to have their income tax returns for 1952 prepared. The defendant made pencil copies of the returns, which were then typewritten in the usual manner. The Millers returned later to pick up their typewritten returns, and Mr. Miller left the sum of $138.78 with "some girl behind the desk" to pay the amounts owing on his Federal and state income tax. Miller received a receipt signed by May E. Jensen, one of the defendant's employees. Although neither Miller nor Mrs. Jensen could identify each other, she presumably was the girl that received the money in question. At this time Miller did not talk with the defendant although he testified that he thought the defendant was in the inner office.

Mrs. Jensen testified that her standard practice was to put the money she received in an envelope with the return and mark the taxpayer's name on it. According to her "there wasn't a cash drawer to put money into * * *." If she received money during the day she would mention it to the defendant if he was present in the office. She could not recall the particular transaction in question. Neither the Miller returns nor the payments to accompany them were received by the tax authorities.

Viewing the evidence as summarized above in the light most favorable to the prosecution,[1] we are of the opinion that it is insufficient

---

[1]See, State v. Schabert, 222 Minn. 261, 268, 24 N. W. (2d) 846, 850; State v. Homme, 226 Minn. 83, 88, 32 N. W. (2d) 151, 154.

as a matter of law to sustain the conviction. The defendant was charged under M. S. A. 622.01(2) which reads as follows:

"Every person who, with intent to deprive or defraud the true owner of his property, or of the use and benefit thereof, or to appropriate the same to the use of the taker, or of any other person:

\* \* \* \* \*

"(2) Having in his possession, custody, or control as a bailee, servant, attorney, agent, clerk, trustee, or officer of any person, association, or corporation, or as a public officer, or person authorized by agreement or by competent authority to hold or take such possession, custody, or control, any money, property, evidence of debt or contract, article of value of any nature, or thing in action or possession, shall appropriate the same to his own use, or that of any other person than the true owner or person entitled to the benefit thereof; \* \* \*

\* \* \* \* \*

"Steals such property, and shall be guilty of larceny."

Among other things, it is essential that the prosecution prove, beyond reasonable doubt, (1) that the defendant had "possession, custody, or control" of the money or property, and (2) that he appropriated it with a felonious intent to his own use or to the use of another.[2]

It is argued that because the defendant did not personally receive the Miller money, he could not, as a matter of law, be guilty of embezzlement. The statute is clear that actual possession is not an essential element of the offense, it being sufficient that the defendant have "control" of the money. As was said in People v. Hess, 107 Cal. App. (2d) 407, 421, 237 P. (2d) 568, 577:

"\* \* \* 'to constitute embezzlement it is not necessary to show actual possession of the money or property. It is sufficient to show that while an accused was not in actual possession of the money it was under his control in the sense that it was under his direction or management (*People* v. *Knott,* 15 Cal. 2d 628, 631 [104 P. 2d 33]).'"

---

[2]It is not essential that the accused intended to appropriate the property to his own use. See, State v. Rue, 72 Minn. 296, 75 N. W. 235.

However, the state's evidence in this regard is far from satisfactory. While it is reasonable to conclude from the evidence that Mrs. Jensen received the Miller money and put it in an envelope, one must engage in considerable speculation to find that the defendant exercised control over it. Mrs. Jensen, not remembering this particular transaction, testified that, while there was no cash drawer to put the money into, she normally put it in an envelope and, if the defendant was present, called it to his attention. When asked whether the defendant was present when he gave Mrs. Jensen the money, Miller replied:

"I couldn't say for sure, but I think he was in the other office at the time."

If the defendant had no knowledge of the receipt of the money, it is difficult to conceive how any felonious intent to appropriate it could be attributed to him.

Even assuming that receipt of this particular money was called to the defendant's attention, there is little if any evidence to show that it was actually deposited in the bank and thereby appropriated to the defendant's use or to the use of another. The customary procedure apparently was to put the envelope containing the money and the tax return in a drawer and intermittently make deposits of this money in the bank. Assuming that the Miller money did get into the drawer with the rest of the envelopes, despite Mrs. Jensen's testimony to the contrary, there was absolutely no showing that this particular money was ever deposited to the defendant's account. While it is true that business custom and procedure are frequently admissible to show the happening of a particular event,[3] it is equally well settled that the facts constituting circumstantial evidence must be of a reliable nature.[4]

Considering the evidence as a whole, we find that proof of facts necessary to establish the essential elements of the offense is left more to conjecture and speculation than to reasonable inferences.

[3] 1 Wigmore, Evidence (3 ed.) § 92.

[4] See, State v. Gorman, 219 Minn. 162, 17 N. W. (2d) 42; State v. Johnson, 173 Minn. 543, 217 N. W. 683; 7 Dunnell, Dig. (3 ed.) § 3234.

We are constrained to conclude that the evidence simply is not sufficient to support the finding of the defendant's guilt beyond a reasonable doubt.

In view of our conclusion it is unnecessary to consider the other points raised by the defendant. Judgment is reversed with directions to enter an order for judgment of dismissal.

Reversed.