No. 41,902

STATE OF KANSAS, *Appellee,* v. LEON C. SMITHERMAN, *Appellant.*

(356 P. 2d 675)

Opinion filed November 12, 1960.

*John A. Etling,* of Kinsley, and *James B. McKay, Jr.,* of El Dorado, argued the cause, and *W. N. Beezley,* of Kinsley, and *J. B McKay,* of El Dorado, were with them on the briefs for the appellant.

*Rae E. Batt,* county attorney, argued the cause, and *John Anderson, Jr.,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

WERTZ, J.: Defendant was charged with unlawfully and wilfully stealing and carrying away certain crude oil. He was found guilty on an information charging him with grand larceny on three counts, as defined by G. S. 1957 Supp., 21-533, and with petty larceny on one count, as defined by G. S. 1957 Supp., 21-535. He appeals, specifying errors hereinafter discussed.

The record discloses that several landowners (Wilson, Bryant and Elledge) separately leased their land under the terms and provisions of an oil and gas lease, Form 88 (Producers). Each lease provided that the premises were granted, demised, leased and let "for the sole and only purpose of mining and operating for oil and

gas, and laying pipe lines, and building tanks, power stations and structures thereon to produce, save and take care of said product. . . ." In consideration of the premises, the lessee covenanted and agreed to *deliver to the credit of lessor*, free of cost, in the pipe line to which he might connect his wells, the equal one-eighth (⅛) part of all oil produced and saved from the leased premises. After assignments by the lessees of the various leases, the defendant became the owner of a working interest therein and was the operator and producer.

A summary of the facts follows. The defendant (appellant), Leon C. Smitherman, discovered and started producing oil from the Wilson, Bryant and Elledge leaseholds. It was agreed that the Skelly Oil Company, who purchased the oil from these three leases, did not have any pipe-line connections to them and all of the oil produced therefrom had to be hauled by truck to Skelly's gathering station at Iuka, Kansas, at which point the oil first entered the Skelly pipe lines. Skelly engaged Groendyke Transport, Inc., to pick up the oil and deliver it to Skelly's receiving station at Iuka. Subsequently, written division orders were entered into between Skelly, the defendant and the other holders of the working and royalty interests.

The Bryant division order provided, "The undersigned, and each of them, guarantee and warrant that they are the legal owners in the proportions set out below of all of the oil produced from the *L. C. Smitherman-Bryant* farm or lease. . . ." The instrument set out the ownership of one-eighth royalty to the landowner in the lease, specified the overriding royalty and working interests to certain named individuals, and provided for one-half of 59/64 of seven-eighths working interest to defendant, L. C. Smitherman. (The working interest to Smitherman varied in the other leases.) The order further provided that the oil received and purchased thereunder would become the property of Skelly upon actual delivery to it or to any of its carriers; that if it should be necessary to transport the oil by truck, Skelly was authorized to deduct the trucking charges; also, that Skelly would pay the respective owners for all oil received according to the division of interests specified therein. The division order further provided that it would bind each interest owner as soon as signed by him. The instrument was signed by defendant and all other interest holders. Similar orders were executed on the other leases.

The evidence discloses that even though Skelly, through its carrier, Groendyke, was picking up the oil from the three mentioned leases in Edwards county, the defendant directed his employees to go upon the premises on divers dates and siphon crude oil from the oil tanks thereon and truck the same to defendant's leasehold located in Cowley county; that on various occasions defendant, through his truck drivers, hauled approximately 2500 barrels of oil from the mentioned leases to Cowley county and placed the same in tank batteries located on defendant's lease, where the oil was treated and then delivered into the Continental Oil Company pipe line and transferred to Continental's refinery at Ponca City, Oklahoma, Continental paying the defendant by crediting his account at the Citizens State Bank of El Dorado.

The gist of defendant's first contention is that the evidence was insufficient to establish the necessary elements of the offenses of grand and petty larceny, as defined by G. S. 1957 Supp., 21-533 and 21-535, respectively. He argues that he was the owner of approximately one-half working interest in the Bryant lease, all the working interest in the Wilson lease and five-eighths working interest in the Elledge lease; that he was in possession of all the oil produced from said leases and therefore committed no trespass in taking and transporting the oil to his own lease in Cowley county and selling it for credit to his own account.

We are of the opinion that this case is controlled by what has been said in *State v. James*, 157 Kan. 703, 706, 143 P. 2d 642. We said there that courts have generally drawn an important distinction based upon the wrongdoer's original relation to the *res*. Thus, where the accused has the mere custody of the property and the legal possession is still in the owner, if the wrongdoer makes away with the property with intent to deprive the owner of it permanently his offense is larceny; whereas, if lawful possession is conferred on the wrongdoer, as where property is entrusted to a bailee or trustee, a later conversion to his own use by the wrongdoer is embezzlement—unless at the time possession is conferred on him he has already formed the wicked intent to convert it to his own use, in which case the offense is classified as larceny.

On the same point, it is stated in 32 Am. Jur. 893 that the character and nature of the crime depend upon the intention of the parties. The intention of the owner not to part with his property when relinquishing possession is the gist and essence of the offense

of larceny and the vital point on which the crime hinges and is to be determined.

We further held in *State v. James*, supra, in quoting from 32 Am. Jur. 958-961, that where one having only the bare charge or custody of property for the owner converts it with intent to steal, he commits a trespass and is guilty of larceny, the possession, in judgment of law, remaining in the owner until the conversion. What amounts to possession and what to mere custody within the meaning of the rules probably cannot be determined according to any settled formula, but the question in any particular case must depend largely upon the capacity in which the defendant was given access to or dominion over the property taken, and upon the powers or duties which the owner gave or imposed upon him with respect thereto. For example, one to whom property is delivered by the owner for some limited, special or temporary purpose may be regarded as having its custody only, and as capable of committing larceny thereof. (See also *State v. Bean*, 181 Kan. 1044, 1051, 317 P. 2d 480.)

In *State v. Walker*, 65 Kan. 92, 68 Pac. 1095, we held:

"One person may have the legal possession of goods of which another, acting for him, may have the mere physical custody, and, in such case, the latter may be guilty of larceny from the former if he keep the goods against the possessor's will with intent to convert them to his own use."

The rule is well stated in 32 Am. Jur. 954 that one who merely has a right to select and retain a specified portion of property for himself may be guilty of larceny if he takes the entire thing with the felonious intention of depriving another of his share, or, the right to take depending on a condition, if he takes contrary to the condition. In the instant case this rule is applicable to other outstanding interests, as well as to the interest of lessor.

In the instant case the lease provided that the lessee was to deliver to the credit of the lessor, free of cost, in the pipe line to which he might connect his wells, the equal one-eighth part of all the oil produced and saved from the premises. The defendant admits, by way of the division order, that the lessor is the owner of one-eighth of the oil and gas. Title to this one-eighth never passed to defendant. Only custody of such oil passed to him for the purpose of complying with the provisions of the lease in delivering one-eighth of the oil to market for credit to the lessor. At no place in the lease is there a provision giving defendant the right to market the one-eighth interest in the oil to his own account.

It is apparent, from a reading of the record in the instant case, that at the time defendant took the oil from the leases in question and transported it to his own lease in Cowley county he had already formed the wicked intent to convert it to his own use. All the necessary elements of grand and petty larceny were present in this case and the district court did not err in the admission of evidence and in its instructions to the jury. The case is affirmed under the authority of *State v. James,* supra, and *State v. Bean,* supra.

It is so ordered.