EDWARD A. ROSE, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 6095

July 6, 1970 471 P.2d 262

*Richards & Demetras,* of Reno, for Appellant.

*Harvey Dickerson,* Attorney General, *William J. Raggio,* District Attorney, and *Kathleen M. Wall,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, ZENOFF, J.:

Edward Rose was a general agent for Pacific General Life Insurance Company. His employment was evidenced by a written contract which provided in particular that he was authorized to collect moneys only for the initial premiums, that all moneys held by him were as a fiduciary trust, and were not to be used for any personal or other purposes whatsoever.

Rose accepted the total sum of $6,500 from Rose Meredith and her husband so that they could reinstate their policies which had lapsed. Rose sent the company his personal check for $6,558 to cover the reinstatement but the check failed to clear. Rose was indicted for embezzlement. In his defense, he testified that he had always retained 80% of the premiums as his commissions, that he used the money for personal obligations, and that he intended to repay the company. He appeals his conviction.

Appellant contends principally that the indictment was fatally defective for failure to allege that Rose's conduct was accompanied by an intent to defraud. However, he misconceives the crime of embezzlement as it was charged in this case.

1. It is within the power of the legislature to declare what acts constitute a crime and fix the punishment for the commission of them. NRS 205.300[1] defining embezzlement is such a

---

[1]NRS 205.300 reads: "1. Any bailee of any money, goods or property, who shall convert the same to his own use, with the intent to steal the same or to defraud the owner or owners thereof and any agent, manager or clerk of any person, corporation, association or partnership; or any person with whom any money, property or effects shall have been deposited or entrusted, who shall use or appropriate such money, property or effects or any part thereof in any manner or for any other purpose than that for which the same was deposited or entrusted, shall be guilty of embezzlement, and shall be punished in the manner prescribed by law for the stealing or larceny of property of the kind and

legislative enactment. Long ago, the act of making off with the money or property of his principal by an agent was declared to be an act of embezzlement. Such protection was necessary for companies whose nature of business created a fiduciary relationship with its agents and employees in the handling of company money.

As it is seen in the footnoted statute, either of two parts of the statute state the essentials of a particular kind of embezzlement. The second part does not require an intent to steal. The act of diverting carries its built-in intent that speaks for itself, that is, the performance of the act, such as using money of an employer for a reason other than for which it was designated, makes the crime. Only the intent to do the act, even though not to steal, is important. Thusly our early court has spoken, State v. Trolson, 21 Nev. 419, 425, 32 P. 930 (1893), and it is still good law.

Rose's conduct was prohibited by that second part of the statute which provides ". . . or any person with whom any money, property or effects shall have been deposited or entrusted, who shall use or appropriate such money, property or effects or any part thereof in any manner or for any other purpose than that for which the same was deposited or entrusted, shall be guilty of embezzlement. . . ."

Under State v. Trolson, supra, the crime of embezzlement is complete whenever an appropriation is made (cf. Commissioner v. Wilcox, 327 U.S. 404 (1946)), and it is to no avail that Rose intended to restore the money at a later time. People v. Talbot, 28 P.2d 1057, 1062 (Cal. 1934). See also Grin v. Shine, 187 U.S. 181, 190 (1902).

---

name of the money, goods, property or effects so taken, converted, stolen, used or appropriated.

"2.  Any use of the money, goods or property by any bailee thereof, other than that for which the same was borrowed, hired, deposited, carried, received or collected, shall be prima facie evidence of conversion and of intent to steal the same and defraud the owner or owners thereof.

"3.  The term 'bailee,' as used in this section, shall be construed to include and mean all persons with whom any money, goods or property has been deposited, and all persons to whom any goods or property has been loaned or hired, and all persons to whom any goods or property shall be delivered, for any purpose whatsoever, and all persons who shall, either as agent, collector or servant, be empowered, authorized or entrusted to carry, collect or receive any money, goods or property of another."

2. Rose's objections to several instructions fail because they too relate to the subject of "intent." Both counsel argued extensively to the jury which led to his assertion now that the jury must have gotten confused over what "intent" was intended. The arguments of counsel are not to be considered as evidence and the instructions to the jury expressly stated that they were not to be considered as such. The jury instructions relating to intent must be read together, not disconnectedly. These guidelines were sufficient in instructing the jury upon the law as to intent and we assume that the jury understood them. In this light we do not find any indication that the jury was confused or misinstructed. Furthermore, the evidence supports the verdict.

Affirmed.

COLLINS, C. J., BATJER, MOWBRAY, and THOMPSON, JJ., concur.