MARLON JAVAR BATIN, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 36525

January 30, 2002                                   38 P.3d 880

[Rehearing denied April 8, 2002]

MAUPIN, C. J., with whom BECKER, J., agreed, dissented.

*Richard F. Cornell,* Reno, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Richard A. Gammick,* District Attorney, and *Joseph R. Plater III,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION ON EN BANC RECONSIDERATION

By the Court, LEAVITT, J.:

Appellant Marlon Javar Batin was convicted of three counts of embezzlement for stealing money from his employer, John Ascuaga's Nugget Hotel and Casino. On direct appeal, Batin contended that his conviction was not supported by sufficient evidence. Specifically, Batin contended that there was no evidence establishing the entrustment element of the crime of embezzlement. In a divided decision, a three-justice panel of this court affirmed Batin's conviction. His petition for rehearing was likewise denied.

Batin then filed a petition for en banc reconsideration, arguing that he was actually innocent of the crime of embezzlement. This court determined that en banc consideration of Batin's case was warranted, and the petition was granted. Having considered the evidence presented in the light most favorable to the State, we now conclude that Batin did not commit embezzlement as a matter of law because there was no evidence presented of the entrustment element of that crime. Because we cannot sustain a conviction where there is no evidence of an essential element of the charged offense, we reverse the judgment of conviction.

## FACTS

In 1993, Batin moved to Sparks from the Philippines and began working as a dishwasher at the Nugget. After several years at the Nugget, Batin became a slot mechanic. Batin's job duties as a slot mechanic included fixing jammed coins and refilling the ''hopper.'' Warren Reid Anderson, Batin's supervisor, explained that the ''hopper'' is the part of the slot machine that pays coins back, and is separate from the ''bill validator'' component of the slot machine where the paper currency is kept. Anderson further testified that Batin had no duties with respect to the paper currency in the bill validator, except to safeguard the funds, and that the cash in the bill validator ''wasn't to be touched.'' Likewise, Anderson testified that if a customer had a problem with a machine that required a cash refund ''it would require supervisory backup in order to take any money out of a slot machine and pass it back to a customer.'' Batin also testified about his job duties as a slot mechanic. Like Anderson, Batin testified that he was prohibited from handling the paper currency inside the bill validator.

As a slot mechanic, Batin was given an ''SDS'' card that was used to both access the inside of the slot machine and identify him as the employee that was opening the slot machine door. The computerized SDS system is physically connected to each slot machine and counts the paper currency placed into each machine's bill validator. The SDS actually records the different denominations of bills and runs numerous reports concerning the currency. The SDS also registers every time that the slot machine door is opened or closed. If the power is turned off to a particular slot machine, the SDS system will only record the opening and closing of the door; it cannot track what happens inside the machine.

Lori Barrington, soft count supervisor, explained that after the money is counted by SDS, it is then counted three more times by a minimum of three Nugget employees. Barrington further testified that there was not much variance between the amount of money SDS recorded that the casino was supposed to have and the amount of money the casino actually had. In fact, out of 1100 slot

machines, there were perhaps three errors per month totaling approximately $100.00 in variance.

In March and early June 1999, however, there were larger discrepancies discovered between the amount of money that the SDS recorded had been put into the slot machines and the amount of money the slot machine actually contained. Kathleen Plambeck, the Nugget's Internal Auditor, testified to several shortages from four different slot machines, totaling approximately $40,000.00.

In reviewing the SDS reports, Plambeck testified that she found a pattern of conduct. Namely, prior to the time that a shortage had been detected on a slot machine, Batin inserted his SDS card into the slot machine, opened the door, turned off the power, and thereafter closed the door on the machine. Plambeck found this pattern of conduct unusual because it was not necessary to turn off the slot machine for most repairs, and no one other than Batin had been turning off the power on the slot machines with the shortages. Batin testified at trial, however, that he turned off the power on the slot machines so that he would not be electrocuted and that he had always turned off the power prior to working on the slot machines.

James Carlisle, an agent with the Nevada Gaming Control Board, investigated Batin and discovered that he gambled regularly at three local casinos, and that he lost tens of thousands of dollars. When Carlisle questioned Batin about how he was able to afford to gamble such large sums of money, Batin could not or did not answer. At trial, however, Batin testified that he was able to afford to gamble large sums of money because he won often.

Although Batin adamantly denied taking the money, Batin was arrested and charged with three counts of embezzlement. The information alleged that Batin had been entrusted with money by his employer and converted the money for a purpose other than that for which it was entrusted. After a jury trial, Batin was convicted of all three counts of embezzlement.

## DISCUSSION

Batin contends that his convictions for embezzlement should be reversed because there was insufficient evidence of an essential element of the crime. We agree.

It is axiomatic that the State must prove every element of a crime beyond a reasonable doubt.[2] Because of the right to due process afforded in our constitutions,[3] and because of ''the significance that our society attaches to the criminal sanction and thus to liberty itself,'' we cannot sustain a conviction where the

---

[2]*Watson v. State,* 110 Nev. 43, 45, 867 P.2d 400, 402 (1994).

[3]U.S. Const. amend. XIV; Nev. Const. art. 1, § 8, cl. 5.

record is wholly devoid of evidence of an element of a crime.[4] Our insistence that the State prove every element of a charged offense beyond a reasonable doubt serves an imperative function in our criminal justice system: "to give 'concrete substance' to the presumption of innocence, to ensure against unjust convictions, and to reduce the risk of factual error in a criminal proceeding."[5]

In the instant case, the State charged Batin with embezzlement and, consequently, at trial, had the burden of proving every element of that crime beyond a reasonable doubt.[6] To prove that a defendant committed the crime of embezzlement, the State must demonstrate beyond a reasonable doubt that the defendant was a *"person with whom any money, property or effects ha[d] been deposited or entrusted,"* and that the defendant *"use[d] or appropriate[d] the money, property, or effects . . . in any manner or for any other purpose than that for which [it was] deposited or entrusted."*[7]

The key distinguishing element of the crime of embezzlement is the element of entrustment.[8] In order to be guilty of embezzlement, a defendant must have been entrusted with lawful possession of the property prior to its conversion.[9] For purposes of proving embezzlement, the lawful possession need not be actual; rather, the State may show that a defendant had constructive possession of the property converted.[10] This court has defined constructive possession as " 'both the power and the intention at a given time to exercise dominion or control over a thing, either

---

[4]*Jackson v. Virginia,* 443 U.S. 307, 315 (1979).

[5]*Id.* (quoting *In re Winship,* 397 U.S. 358, 363 (1970)).

[6]We note that had the State charged Batin pursuant to NRS 205.0832, the Omnibus Theft Crime statute, the evidence presented at trial would have supported a conviction under that statute because there was sufficient evidence to support a finding that Batin was guilty of larceny. However, Batin was neither charged under the Omnibus Theft Crime statute nor charged with larceny. Rather, Batin was charged solely with the crime of embezzlement, a crime that Batin did not commit.

[7]NRS 205.300(1) (emphasis added).

[8]*See* 3 Charles E. Torcia, *Wharton's Criminal Law* § 393 (15th ed. 1995); *State v. Trolson,* 21 Nev. 419, 32 P. 930 (1893); *see also State v. Benigas,* 95 Nev. 358, 594 P.2d 724 (1979); *Rose v. State,* 86 Nev. 555, 471 P.2d 262 (1970).

[9]*See Trolson,* 21 Nev. at 423; *State v. Superior Ct., in and for County of Pima,* 555 P.2d 898, 899 (Ariz. Ct. App. 1976); *see also State v. Taylor,* 378 P.2d 352, 353-54 (Utah 1963) ("[T]he essential wrong is committed in obtaining possession of the property. . . . One could not embezzle that which he had already stolen.").

[10]*See State v. Smitherman,* 356 P.2d 675 (Kan. 1960); *State v. Haynes,* 80 N.W.2d 859 (Minn. 1957); *State v. Doucet,* 14 So. 2d 917 (La. 1943).

directly or through another person or persons.' ''[11] In proving constructive possession, a showing that a defendant was given mere access to the property converted is insufficient.[12] Often, an individual is entrusted with access to a particular place or thing without being given dominion and control over the property therein.[13] This is particularly true in instances, like the present one, where the individual is expressly told that he is not allowed to touch the property in the place to which access is granted.

In the instant case, the record reveals that Batin was not entrusted with lawful possession, constructive or otherwise, of the currency he allegedly took from the bill validators. In fact, both Batin and his supervisor testified that Batin had no job duties whatsoever involving this currency and that it "wasn't to be touched." Further, Batin had absolutely no power to exercise control over this currency, as Batin was required to contact his supervisor for any job task involving possession of the currency inside the bill validator, such as a cash refund to a customer. Because the aforementioned testimony was not contradicted at trial, we conclude that there was insufficient evidence of an essential element of embezzlement, as Batin was never entrusted with actual or constructive possession of the currency taken.

Our dissenting colleagues conclude that there was sufficient evidence of constructive possession because Batin had access to the inside of the slot machine where the bill validator was located and, occasionally, observed non-employee slot repairmen work on the slot machine. As previously discussed, however, constructive possession requires a showing that the accused was entrusted with control over property. We cannot say that an individual exercises control over property when he is prohibited from touching it.

In light of the foregoing, we are compelled to reverse Batin's conviction. The State failed to prove the entrustment element of the crime of embezzlement beyond a reasonable doubt, and we cannot sustain a conviction where the record is devoid of an essential element of a charged offense. To do otherwise, would

---

[11]*Palmer v. State,* 112 Nev. 763, 768, 920 P.2d 112, 115 (1996) (quoting *Black's Law Dictionary* 1163 (6th ed. 1990)).

[12]*See United States v. Selwyn,* 998 F.2d 556, 557-58 (8th Cir. 1993) (holding that maintenance person at post office could not be guilty of embezzling mail because he never had lawful possession of the mail); *United States v. Sayklay,* 542 F.2d 942, 944 (5th Cir. 1976) (holding that bookkeeper at bank could not be guilty of embezzling funds derived from blank counter checks because she never had lawful possession of the checks).

[13]For example, if a person gives a neighbor the key to their house to let the plumber in to fix a leaky faucet, and the neighbor steals the television set, the crime is larceny not embezzlement because the neighbor was never entrusted with possession of the television.

imperil our system of justice by undermining the presumption that those charged with crimes are innocent until proven guilty beyond a reasonable doubt.

SHEARING and AGOSTI, JJ., and CHERRY and MADDOX, D. J., concur.

MAUPIN, C. J., with whom BECKER, J., agrees, dissenting:

We respectfully dissent and would affirm the judgment of conviction. In our view, there is sufficient evidence to support the jury's finding that Batin was guilty of embezzlement. Historically, this court has afforded great deference in reviewing a jury's finding, refusing to overturn a verdict that is supported by sufficient evidence.[1]

To prove that a defendant committed the crime of embezzlement, the State must proffer evidence that the defendant was entrusted with lawful possession of the property which he converted.[2] The State need not prove that the defendant actually possessed the property, but must merely prove that the defendant had constructive possession of the property alleged to have been embezzled.[3]

In viewing the evidence in a light most favorable to the State, we conclude that there is ample evidence to support the jury's verdict that Batin had constructive possession of the paper currency inside the bill validator. The State proffered evidence that Batin's employer entrusted him with an SDS card, which allowed Batin to access the bill validator inside the slot machine where the currency was kept. Moreover, Batin's job, as prescribed by his employer, included safeguarding the funds contained inside the bill validator when he made a slot machine repair and when supervising non-employee slot machine repairmen. In safeguarding the currency inside the bill validator, Batin was entrusted with dominion and control over that currency in a manner sufficient to support the jury's finding that Batin had constructive possession over the funds that he converted.[4]

Accordingly, because we conclude that there was sufficient evidence of the crime of embezzlement, we would affirm the judgment of conviction.

---

[1]*McNair v. State,* 108 Nev. 53, 825 P.2d 571 (1992); *Bolden v. State,* 97 Nev. 71, 624 P.2d 20 (1981).

[2]NRS 205.300(1).

[3]*See* 3 Charles E. Torcia, *Wharton's Criminal Law* § 393 (15th ed. 1995).

[4]*See Palmer v. State,* 112 Nev. 763, 768, 920 P.2d 112, 115 (1996) (defining constructive possession as " 'both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons' " (quoting *Black's Law Dictionary* 1163 (6th ed. 1990))).