No. 43,061

STATE OF KANSAS, *Appellee,* v. CLYDE CROSS, *Appellant.*

(375 P. 2d 607)

Opinion filed November 3, 1962.

*Robert W. Feiring,* of Kansas City, and *Michael D. Konomos,* of Kansas City, Missouri, argued the cause and were on the brief for the appellant.

*Glen Tongier,* County Attorney, argued the cause, and *William M. Ferguson,* Attorney General, and *B. D. Watson,* Assistant County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRICE, J.: The defendant, Clyde Cross, has appealed from a conviction of the offense of embezzlement by bailee as defined by G. S. 1949, 21-547, which reads:

"If any carrier or other bailee shall embezzle or convert to his own use, or make way with or secrete, with intent to embezzle or convert to his own use, any money, goods, rights in action, property or valuable security or other effects, which shall have been delivered to him, or shall have come into his possession or under his care as such bailee, although he shall not break any trunk, package, box or other thing in which he received them, he shall upon conviction be adjudged guilty of larceny, and punished in the manner pre-

scribed by law for stealing property of the nature or value of the article so embezzled, taken or secreted."

The information charged:

"THAT heretofore and to-wit on or about the _____ day of October, A. D., 1959, at and within the county of Montgomery and state of Kansas, the above named defendants, Clyde Cross and Raymond Odle, then and there being and then and there acting jointly and together, and being then and there the bailees of certain personal property, to wit:

"Gasoline of the value of $170.00,

which said personal property was then and there owned by the Coffeyville Co-operative Refinery Association, and the said defendants, acting jointly and together, did then and there by virtue of their trust as bailees take said personal property under their care as such bailees, the same having a fair and reasonable value of $170.00, good and lawful money of the United States of America, and being the property of the said Coffeyville Co-operative Refinery Association, all as aforesaid; and after having so received said personal property in the manner aforesaid, did then and there willfully, wrongfully, unlawfully and feloniously embezzle and convert to their own use the said personal property aforesaid, which came under their care as such bailees; all with intent then and there on the part of them, the said defendants, to convert said property to their own use and deprive the owner of the use thereof; all without the consent of the owner, Coffeyville Co-operative Refinery Association; all contrary to and in violation of the form of the statutes in such cases made and provided, and against the peace and dignity of the State of Kansas."

Highly summarized, the record shows the facts to be substantially as follow:

During the latter part of 1959 the Coffeyville Co-operative Refinery Association, hereafter referred to as the refinery, was sustaining huge losses of gasoline from its loading dock. In September of that year the loss was 74,886 gallons, and in October the loss was 63,672 gallons, which was double the ordinary operational loss. One of the large gasoline storage tanks showed signs of leaking and a new bottom was placed in the tank. Nevertheless, the loss for November amounted to 129,528 gallons. The gasoline losses reached their peak in December, totalling 202,246 gallons, which figure exceeded the ordinary operational loss by six times. In January, 1960, the loss totalled 86,310 gallons. In February the alleged mass embezzlement of gasoline from the dock was discovered and the loss for that month dropped to 5,082 gallons. Shortly thereafter the defendant and all other dock employees were removed from the loading dock.

The defendant was a biller on the loading dock and his assigned loader was one Odle. Defendant had more seniority on the loading dock than any other employee and had been involved in an investi-

gation for theft of gasoline back in 1948. During the fall of 1959 there were four shifts of dock workers at the refinery loading dock. Three workers were on duty on three of the shifts. The six o'clock p. m. to midnight shift had only two workers, a biller and a loader— consisting of defendant and Odle.

Odle also was a part-time employee of a service station in Coffey-ville. At the time he was employed by the service station it was agreed he would receive one dollar per hour "and his and the defend-ant's gasoline." They were to "pay" their accounts at the station with gasoline from the refinery dock. Other dock workers at the refinery also had a similar arrangement at the service station.

In late September or early October, 1959, Odle had an account at the service station of approximately $140 to $150. The defendant had an account there of somewhere between $35 and $50. Odle suggested to one L, one of the owners of the service station, that he, L, bring a truck out to the refinery to get a load of gasoline to apply on Odle's and defendant's accounts at the service station. Pursuant to this suggestion L drove a truck out to the loading dock at the refinery in the nighttime. Defendant and Odle were the only work-ers present. L pulled the truck up to a corner of the loading dock and Odle went down below to the ground level, where the meter mechanism was housed, and disconnected the meter on the regular gasoline spout. Defendant was approximately eight feet above on the loading ramp. The loading spout was placed in a compartment of L's truck, which had a capacity of 1,500 gallons. The meter hav-ing been disconnected, the flow of gasoline through the spout was controlled by a lever operated manually by defendant. This pro-cedure was followed with respect to another compartment of L's truck, and in the course of the undertaking some gasoline was spilled, whereupon L told Odle "to shut off the flow of gasoline because the spill-over made him nervous." After the hand valve was shut off the meter register was put back into place. L then drove off with the truck load of unmetered and nonbilled gasoline to the service station and marked the accounts of Odle and defendant on the serv-ice station ledger as "paid." These ledger cards, together with the ledger cards of other dock workers at the refinery, were later de-stroyed by L's partner for purposes of concealment. The service station received approximately 50,000 gallons of gasoline in the manner related and through "overload."

The evidence also disclosed other similar transactions involving

the defendant in connection with refinery gasoline, some of which involved the payment of cash for gasoline so diverted.

Defendant was found guilty as charged. His motions for discharge and for a new trial were overruled. The verdict was approved and judgment thereon was entered; and he was sentenced to confinement in the state penitentiary under applicable statutes. Although he has appealed from the order overruling his motion for a new trial such ruling is not specified as error. He also appealed from the order overruling his motion for discharge, and his principal specification of error is:

"1. The trial court erred in overruling defendant's motion to discharge at the conclusion of the State's evidence:

"A. For failure of the State to sustain the burden of proof that defendant was seized of possession of the property allegedly embezzled, one of the elements of the crime of embezzlement by bailee.

"B. For failure of the State to sustain the burden of proof that defendant had embezzled or converted to his own use the property of another, one of the elements of the crime of embezzlement by bailee.

"C. For the reason that a material variance between the allegation and the proof as to the ownership of the property allegedly embezzled which could only result in an erroneous or an impossible verdict."

As argued in his brief—and upon the oral argument of this appeal—defendant's contention is this:

He was charged with the offense of "embezzlement by bailee," and therefore it was necessary for the state to prove that as such bailee he had *possession* of the gasoline in question as distinguished from mere *custody* of it by virtue of his employment. He concedes that if he acquired *possession* of the gasoline the trial court was correct in overruling his motion for discharge and in submitting the case to the jury, but contends the evidence established mere *custody* on his part—rather than *possession*. In other words—it is argued that he should have been charged with *larceny* rather than *embezzlement*—and reliance is had on *State v. James*, 157 Kan. 703, 143 P. 2d 642, in which it was said:

".  .  . While larceny and embezzlement are distinct offenses and so denounced in our crimes act, they are measurably akin to each other, but there are distinguishing characteristics in each. Thus in larceny the element of *trespass* is inherent in its commission while in embezzlement *possession* of the *res* is obtained for a lawful purpose but which the wrongdoer later perverts to an unlawful use or purpose of his own.

.  .  .  .  .  .  .  .  .  .

"The courts have generally drawn an important distinction based upon the wrongdoer's original relation to the *res*. Thus where the accused has the mere

custody of the property and the legal possession is still in the owner, if the wrongdoer makes away with the property with intent to deprive the owner of it permanently his offense is larency; whereas if lawful possession is conferred on the wrongdoer as where property is entrusted to a bailee or trustee, a later conversion to his own use by the wrongdoer is embezzlement—unless at the time possession is conferred on him he already has formed the wicked intent to convert it to his own use, in which case the offense is classified as larceny." (p. 706.)

In that case the defendant, a farm worker, drove with the complaining witness, a farmer, to a field adjacent to the farm house. He drove along for the express purpose of returning the truck to the house where he was to resume mowing weeds. After his employer, the complaining witness, got out of the truck, defendant drove it back to the house and parked it. He then entered the house, changed his clothes, stole some articles in the house, and drove the truck away. He later was charged with *larceny* of the truck. During the trial he contended that if he was guilty of anything it was *embezzlement* rather than *larceny*. In holding that defendant was properly charged with *larceny*, this court said:

". . . Defendant had been given the bare custody of the truck to drive it back to the house. His custody of the truck, never amounting to legal possession, terminated when he took it to the house as his employer directed him to do. What he did afterwards, about changing his clothes, stealing some other clothing, some money and a rifle, and driving off with the truck constituted an entirely new and independent adventure, in no way related to the purpose for which his employer gave him the bare custody of the truck. It was clearly by unlawful trespass that he appropriated the truck to his own use with the intent to deprive the owner of it. His offense had none of the elements—none of the distinctive earmarks—of embezzlement." (pp. 708, 709.)

On their face—the facts of the James case clearly distinguish it from the one before us. Furthermore, if, as contended by defendant, the element of "possession" is indispensable to establish the offense of "embezzlement by bailee" under the statute (G. S. 1949, 21-547), we believe the evidence is clear that for all practical purposes the defendant and the other dock workers at the refinery had the gasoline in their "possession" during their respective shifts.

In addition—and without attempting to indulge in a purely academic discussion of the so-called fine-spun distinctions between larceny and embezzlement—we believe that defendant places a too narrow construction on the language of the statute involved. In substance it provides that if any bailee shall embezzle or convert to his own use any property which shall have been delivered to him

or shall have come into his possession *or under his care* as such bailee, he shall, upon conviction, be adjudged guilty of larceny and punished in the manner prescribed by law for stealing property of the nature or value of the article *so embezzled or taken.* That the gasoline in question came under defendant's care as bailee cannot be disputed, and neither is it disputed that he converted it to his own use.

Some point is made of the fact there appeared to be some discrepancy in the evidence as to the correct "company" name of the owner of the gasoline alleged to have been embezzled or converted. The discrepancy, if any, was purely technical in nature, did not prejudice or mislead defendant in any way, and the contention with respect thereto is without merit. (G. S. 1949, 62-1718.)

Other matters urged by defendant have been considered but likewise are found to be without merit. Defendant was properly charged and convicted, and his motion for discharge was properly overruled.

The judgment is affirmed.