The STATE of Utah, Plaintiff and Respondent,

v.

Louis Robert WHITE, Defendant and Appellant.

No. 16996.

Supreme Court of Utah.

Sept. 30, 1983.

Timothy Houpt, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Salt Lake City, for plaintiff and respondent.

DURHAM, Justice:

Appellant Louis Robert White was convicted of aggravated robbery by a jury in the Third Judicial District in Salt Lake County. His case was previously before this Court when we reviewed an "*Anders*" brief submitted by his appointed trial counsel.[1] We granted trial counsel's request to withdraw from the case and ordered substitute counsel appointed to pursue this appeal. *State v. Clayton,* Utah, 639 P.2d 168, 171 (1981). The questions on appeal concern the showing of a witness' unavailability, and the effective assistance of counsel. We affirm.

The owner of the King Pharmacy and his employee were present when it was robbed by a tall, black man wearing a stocking over his face and carrying a gun in his hand. The robber handed the owner a bag and told him to fill it with drugs, which the owner did. Before the robber left the pharmacy he picked up a pill bottle from a shelf, looked at it, and placed it back on the shelf. The police were able to obtain one fingerprint from this pill bottle. That fingerprint was shown to have come from the third finger of White's right hand.

At trial, White took the stand and gave his version of the incident. He testified that on the day of the robbery he went to the building where the pharmacy is located to run an errand. Inside the building, but outside of the pharmacy, he collided with a man carrying a gun and a bag. He said he recognized the man as one Otis Lee Latham. As a result of the collision, Latham allegedly dropped the bag and spilled some of the items it contained. One of these items was a pill bottle, which White said he picked up, but then dropped because he was "worried" about the circumstances. He testified that he then left the building.

Defense counsel called to the stand Terry Lewis Thomas, an inmate in the Salt Lake County jail. Thomas testified that he was acquainted with Latham, who was also an inmate at the jail, and that he and Latham had talked about White and about a robbery. When defense counsel asked Thomas to relate the conversation, the prosecutor objected on the ground of hearsay. Defense counsel sought to introduce Latham's conversation with Thomas as an admission against the interest of the declarant, proffering that Thomas' testimony would show that Latham confessed to the robbery. The court sustained the objection because Latham had not been shown to be unavailable to testify in court.

Defense counsel told the court that she had talked to an attorney representing Latham in another matter, that the attorney

---

1. *See Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), in which the Supreme Court clarified the responsibilities of appointed counsel who concludes that an indigent client's criminal appeal is without merit.

had told her Latham would assert his Fifth Amendment privilege if called to testify in this case, and that he had instructed her not to speak with Latham. She argued that, although Latham was physically available, she would violate her professional ethics if she called Latham to the stand knowing he would assert his Fifth Amendment privilege. The trial judge disagreed. He suggested that Latham could be subpoenaed to appear in court. He also directed defense counsel to speak to Latham about his alleged confession before calling him to the stand to ascertain whether or not he intended to assert a constitutional privilege to testify. The next day, however, defense counsel did not proceed with the evidence concerning Latham's alleged confession to Thomas, nor did she call Latham to the stand.

We must decide two issues. First, did the trial court err in finding that Latham had not been shown to be unavailable as a witness? Second, was White denied effective assistance of counsel when his defense counsel failed to attempt to introduce Latham's alleged confession or obtain his testimony at trial?

■ Rule 62(7) of Utah R.Evid. defines "unavailable as a witness" in pertinent part as follows:

"Unavailable as a witness" includes situations where the witness is (a) exempted on the ground of privilege from testifying concerning the matter to which his statement is relevant . . . .

The Fifth Amendment privilege against self-incrimination ". . . comes into operation only where a specific question is asked." *State in Interest of P.L.L.,* Utah, 597 P.2d 886, 889 (1979) (footnote omitted). It thus cannot be claimed in advance of questions actually asked. *Thoresen v. Superior Court,* 11 Ariz.App. 62, 461 P.2d 706, 711 (1969). Moreover, "[a]n attorney for a witness cannot claim a privilege against self-incrimination; he can only advise the witness. In order for the claim to be honored by the court, it must be made by the witness." *State v. Anderson,* 27 Utah 2d 276, 279, 495 P.2d 804, 806 (1972) (footnote

omitted). Latham could not have been exempted from testifying on the ground of privilege until he had personally asserted his Fifth Amendment privilege under oath in response to a question. Only at that point would he have been "unavailable" within the meaning of Utah Rule of Evidence 62(7)(a). As Latham did not do so, the ruling of the trial judge was correct.

■ There is no merit to the appellant's contention that defense counsel could not call Latham to testify because she knew Latham would invoke his Fifth Amendment privilege. A lawyer conducts himself unprofessionally when, *for the purpose of impressing upon the jury the fact of the claim of privilege,* he calls a witness to testify when he knows the witness will claim a valid privilege not to testify. *State v. Travis,* Utah, 541 P.2d 797, 799 (1975). "The fundamental point is that the exercise of the privilege is not evidence to be used in the case by any party." *Id.* (quoting *State v. Smith,* 74 Wash.2d 744, 446 P.2d 571 (1969)). Using the exercise of a privilege as evidence is readily distinguishable from using it to demonstrate a declarant's unavailability. The latter, far from being prohibited, may be required. Without subpoenaing Latham and interviewing him as suggested by the trial court, defense counsel had no means of establishing whether he would assert his privilege or not.

As a sub-part of his argument that Latham was properly shown to be unavailable, the appellant also argues that the Code of Professional Responsibility forbade his defense counsel from visiting Latham in jail and asking him whether he would assert his privilege after she had been instructed not to do so by Latham's attorney in another matter. We need not discuss this point because appellant's argument is irrelevant. Whatever the status of defense counsel's knowledge, personal or otherwise, about Latham's intent to assert his privilege, she would still have been required to subpoena him to testify before the trial judge in order to show unavailability. As we have already indicated, an attorney's knowledge that a witness intends to assert his Fifth

Amendment privilege against self-incrimination does not bar calling that witness for the purpose of showing his unavailability.

We must also decide whether White was denied the effective assistance of counsel when his attorney decided not to proceed with the evidence regarding Latham's alleged confession. In *Codianna v. Morris,* Utah, 660 P.2d 1101 (1983), we most recently set out the considerations necessary to determine whether a conviction should be reversed or set aside on the basis of ineffective assistance of counsel:

(1) The burden of establishing inadequate representation is on the defendant "and proof of such must be a demonstrable reality and not a speculative matter."

(2) A lawyer's "legitimate exercise of judgment" in the choice of trial strategy or tactics that did not produce the anticipated result does not constitute ineffective assistance of counsel.

(3) It must appear that any deficiency in the performance of counsel was prejudicial. In this context, prejudice means that without counsel's error there was a "reasonable likelihood that there would have been a different result."

*Id.* at 1109 (citations omitted).

When the trial concluded on the day after Thomas had been called to testify, defense counsel had made no further attempt to introduce Latham's alleged confession, nor had she subpoenaed Latham himself. Although defense counsel had been unable to locate Latham the previous evening at the county jail, she had been informed that morning that Latham was in fact there. Nothing in the record indicates that defense counsel discovered Latham's location too late or that the trial court prevented her from subpoenaing him.

The trial transcript shows that after the jury retired to deliberate their verdict, the following exchange took place between the trial judge and counsel:

THE COURT: That is the obligation of the defendant to show the unavailability.

MR. PAYNE [Prosecutor]: I understand that, your Honor. But, in case of an appeal I would like it on the record she was informed that Mr. Latham was down in the jail and that he was in the building, and I think that is something that should be on the record and the jailer is here and can testify.

\* \* \* \* \* \*

MS. FLETCHER [Defense Counsel]: ... could I cover myself in case of an appeal or a writ on the record?

THE COURT: What is there to cover? ... Both sides rested and no proffer made or offer to the Court.

MS. FLETCHER: I agree, I believe, your Honor, it would only cover me in case of a future writ.

THE COURT: All right.

MS. FLETCHER: With regard to tactics. I was informed this morning at about 10 o'clock that Mr. Latham was, in fact, in the Salt Lake County Jail. When I called last night two times, they could not tell me he was there. I made a decision—this is for his knowledge—that at 10 o'clock this morning I would not proceed with that part of my evidence in case there is a—

THE COURT: I understand, yes.

MS. FLETCHER: Thank you.

From this exchange, we can only conclude that it was defense counsel's tactical decision not to call Latham after it was clear he was physically available and would have to testify under oath before his alleged confession could be introduced. A contrary conclusion would be merely speculative and the appellant presents no evidence to support one. The character of Latham and/or his alleged confession may well have dictated that this line of defense be dropped as a tactical matter. The defendant has made no showing to the contrary.

Finally, the appellant does not establish that there is any reasonable likelihood that the jury would have reached a different result if Latham had been subpoenaed and testified. We have no way of knowing what Latham's testimony would have been. He might have asserted a Fifth

Amendment privilege, or he might have testified and denied ever confessing to Thomas. His testimony could well have been prejudicial to the appellant's case. Even if we assume arguendo that Latham would have asserted his Fifth Amendment privilege and that Thomas would then have been allowed to testify as to Latham's alleged confession, such testimony would not have explained why White's fingerprint was on the pill bottle that was picked up by the robber and replaced on the pharmacy shelf in front of two uncontroverted witnesses. This evidence alone was sufficient to support appellant's conviction.

We hold that Otis Lee Latham was not shown to be unavailable to testify, and the ruling of the trial judge excluding as hearsay the testimony of his alleged confession to Terry Lee Thomas was correct. We also hold that there has been no showing that the appellant was not effectively assisted by counsel.

Affirmed.

HALL, C.J., and STEWART, OAKS and HOWE, JJ., concur.