RICHARD LEE PALMER, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 26842

June 24, 1996                    920 P.2d 112

*Morgan D. Harris,* Public Defender, *Howard S. Brooks* and *Jennifer Hartman,* Deputy Public Defenders, Clark County, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Stewart Bell,* District Attorney, *James Tufteland,* Chief Deputy District Attorney, and *Stacy L. Kollins,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

*Per Curiam:*

At approximately 11:00 p.m. on July 29, 1994, John Wilson drove to the Point After Bar in Las Vegas to play pool with some friends. He drove a 1993 Jeep Renegade, which his father, a general manager for Chrysler Corporation, allowed Wilson to use as his own vehicle. While at the bar, Wilson played pool with friends while appellant Richard Lee Palmer and his companion, Leonard Thompson, played pool at a neighboring table. The keys to the jeep were on a table adjacent to the pool tables. At 2:00 a.m., Wilson and his friends decided to leave the bar, but Wilson was unable to locate his keys. Wilson went outside to where he parked the jeep only to discover that it was missing. He called the police to report it as stolen.

Kenneth Pope, one of Wilson's friends, located the jeep within minutes, approximately one mile from the bar. Palmer and Thompson were with the jeep, dismantling the convertible top. When the police arrived at the scene, they arrested Palmer and Thompson. Palmer and Thompson were charged with grand larceny auto and possession of a stolen vehicle, and they were tried separately. The jury convicted Palmer of possession of a stolen vehicle and the judge sentenced him to four years in the Nevada State Prison.

On appeal, Palmer contends that the district court erred when it denied his request to have Leonard Thompson testify as a witness at Palmer's trial. As previously noted, the State filed criminal charges against Thompson based upon the same incident, but Thompson's case was tried separately. Palmer's defense counsel requested that Thompson be called as a witness in the instant case, while Thompson had yet to be tried for the charges against him. In response to defense counsel's request, the district court stated:

> I discussed this matter this morning with Mr. Marty Hastings who represents Mr. Thompson on his case in Justice Court. He tells me that Mr. Thompson is going to invoke his right to the [F]ifth [A]mendment and will not testify in his behalf. Based on that and based on the law I cannot have him brought in.

Palmer's defense counsel made an objection to the ruling to preserve the issue for review by this court.

Palmer contends that his Sixth Amendment right to compulsory process was violated because the district court denied his request to allow Thompson to testify. He cites Bell v. State, 110 Nev. 1210, 885 P.2d 1311 (1994), to assert that the district court's reliance on Thompson's attorney was improper because Thompson himself did not invoke his Fifth Amendment right.

Generally, a defendant in a criminal action has a right to compel production of witnesses in his or her own behalf. U.S. Const. amend. VI; Washington v. Texas, 388 U.S. 14, 17-19 (1967); Bell v. State, 110 Nev. 1210, 1213, 885 P.2d 1311, 1313 (1994). However, this right is not absolute. *Bell,* 110 Nev. at 1213, 885 P.2d at 1313-14. For example, "[a] valid assertion of the witness' Fifth Amendment rights justifies a refusal to testify despite the defendant's Sixth Amendment rights." United States v. Goodwin, 625 F.2d 693, 700 (5th Cir. 1980).

This court has addressed a defendant's Sixth Amendment right to compulsory process in *Bell.* 110 Nev. 1210, 885 P.2d 1311. In *Bell,* the defendant was convicted of twelve counts of uttering a forged instrument. *Id.* at 1212, 885 P.2d at 1313. Bell argued on appeal that the district court erred when it rejected his motion to compel the appearance at trial of an out-of-state witness whom Bell asserted was material to his defense. *Id.* This court agreed and reversed Bell's conviction and remanded for a new trial.

This court held that pursuant to NRS 174.425, Bell made a sufficient showing of materiality to justify the issuance of a certificate to compel the witness to attend and testify at Bell's trial, and the district court erred in failing to issue such a certificate. *Id.* at 1213-14, 885 P.2d at 1314. This court stated:

> The reasons the trial court gave for refusing to compel Beyers' presence do not stand up to scrutiny. One of the principal reasons the trial judge gave for refusing to compel Beyers' appearance at trial was his belief that Beyers would probably refuse to testify for fear of incriminating himself. However, the possibility that a witness may invoke his or her Fifth Amendment privilege against self-incrimination, by itself, does not justify refusing to secure an out-of-state witness' presence. State v. Schreuder, 712 P.2d 264, 275 (Utah 1985). The Fifth Amendment privilege comes into operation only when a specific question is asked. *Id.* (citing State v. White, 671 P.2d 191, 193 (Utah 1983)). Moreover, in order for a claim of privilege to be recognized, it must come from the witness himself or herself. *Id.* (citing *White,* 671 P.2d at 193). For these reasons, the trial court's concern about Beyers' possible silence was premature. More importantly, given that Beyers actually, previously offered excul-

patory testimony at Bell's preliminary hearing, it was too speculative to say whether Beyers would refuse to testify, or at what point he might do so.

*Id.* at 1214, 885 P.2d at 1314. In *Bell,* this court determined that it was improper to deny Bell's motion to compel an out-of-state witness to appear based upon the speculation that the witness would invoke his Fifth Amendment right against self-incrimination. *Id.* In so doing, this court stated that the Fifth Amendment only operates when a specific question is asked. *Id.* This court further stated that the witness must invoke the privilege himself or herself in order to be recognized. *Id.*

Palmer argues that *Bell's* dicta regarding the Fifth Amendment is on point. Palmer asserts that because Thompson's attorney, not Thompson himself, invoked the privilege against self-incrimination, it was improper for the court to recognize the privilege. Further, because Thompson was not specifically questioned by the court in an *in camera* hearing nor by counsel at trial, the Fifth Amendment does not operate because no specific question was asked.

We recognize that the language in *Bell* regarding the Fifth Amendment may be viewed too broadly. By way of clarification, we hold that the Fifth Amendment may operate even when no specific question is asked of the witness when there has been a reliable indication that the witness will invoke the Fifth Amendment. Moreover, a witness may invoke such a right through his or her counsel. *See* State v. McDowell, 247 N.W.2d 499 (Iowa 1976) (holding that witness may assert Fifth Amendment privilege against self-incrimination by speaking through counsel); Sherrick v. State, 725 P.2d 1278 (Okla. Crim. App. 1986) (finding that trial court properly refused defense counsel's request to call witness after *in camera* hearing where witness's attorney informed court that witness intended to invoke privilege against self-incrimination).

Although a personal invocation of the privilege is preferred, we conclude that the district court did not err in denying Palmer's request to have Thompson testify at trial, because Thompson invoked his Fifth Amendment right against self-incrimination through his counsel at an *in camera* hearing. The district court was justified in relying upon Thompson's counsel's representation in making its ruling. We must note that Thompson's counsel affirmatively represented to the court that Thompson would invoke the right, unlike in *Bell,* where the judge merely speculated that the witness would invoke the right.

Palmer also contends on appeal that there is insufficient evidence to convict him of possession of a stolen vehicle on two grounds. First, he argues that the State failed to prove that he had "possession" of the vehicle because no one saw him drive the jeep nor did he have the keys. Second, Palmer asserts that the State failed to prove that the vehicle was "stolen" because the record owner of the vehicle, Chrysler Corporation, failed to testify and assert that it did not give consent for someone else to drive the jeep.

The standard of review for sufficiency of evidence upon appeal is whether the jury, acting reasonably, could have been convinced of the defendant's guilt beyond a reasonable doubt. Kazalyn v. State, 108 Nev. 67, 71, 825 P.2d 578, 581 (1992). This court has further stated that when sufficiency of the evidence is challenged on appeal, "[t]he relevant inquiry for the court is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Koza v. State, 100 Nev. 245, 250, 681 P.2d 44, 47 (1984) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)) (emphasis in original).

NRS 205.273, the statute defining the offense of possession of a stolen vehicle, states in pertinent part:

> Any person who, . . . has in his possession any motor vehicle which he knows or has reason to believe has been stolen . . . shall be punished by imprisonment in the state prison for not less than 1 year, nor more than 10 years, or by a fine of not more than $10,000, or by both fine and imprisonment.

NRS Chapter 205, Crimes Against Property, does not define possession in the context of stolen motor vehicles. However, other authorities provide a definition of possession. According to Black's Law Dictionary:

> The law, in general, recognizes two kinds of possession: actual possession and constructive possession. A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it. A person, who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.

Black's Law Dictionary 1163 (6th ed. 1990). In cases addressing narcotics possession, this court has stated that " 'possession may be imputed when the contraband is found in a location which is immediately and exclusively accessible to the accused and subject to [his] dominion and control.' " Sheriff v. Shade, 109 Nev. 826, 830, 858 P.2d 840, 842 (1993) (quoting Glispey v. Sheriff, 89 Nev. 221, 223, 510 P.2d 623, 624 (1973)).

Baker v. State, 93 Nev. 11, 558 P.2d 629 (1977), is also instructive on the issue of possession. In that case, Baker appealed the district court's denial of his pre-trial petition for writ of habeas corpus. Id. at 12, 558 P.2d at 629. Baker and two other suspects were arrested for possession of stolen property in violation of NRS 205.275 after police observed them driving up and down a Las Vegas street attempting to sell chainsaws from the vehicle. Id. "The vehicle contained four stolen chainsaws, one in the back seat (with Baker) and three in the trunk." Id.

This court rejected Baker's argument that his mere presence in a vehicle containing stolen chainsaws was insufficient to support an inference that he possessed the chainsaws. This court stated that "although mere presence cannot support an inference that one is a party to an offense, presence together with other circumstances may do so." Id. at 13, 558 P.2d at 629 (citing Winston v. Sheriff, 92 Nev. 616, 555 P.2d 1234 (1976)). This court continued, "[h]ere, as in Winston, the circumstances surrounding the 'mere presence' of Baker support a reasonable inference that he probably committed the charged offense." Id.

In the instant case, we conclude that there is sufficient evidence to show that Palmer was in constructive possession of the jeep, if not actual possession, despite the fact that he did not have the keys and no one saw him drive the vehicle. Wilson's friend, Kenneth Pope, testified that he saw Palmer inside the jeep dismantling the convertible top. When a police officer arrived at the scene, he saw Palmer "standing on the side of the jeep, leaning into the jeep, and . . . taking parts off the jeep." We conclude that these circumstances are sufficient to demonstrate that Palmer was in "possession" of the jeep because he was exercising control over it at that point in time.

Palmer also argues that the State failed to prove that the vehicle was stolen because no agent of Chrysler Corporation, the record owner of the vehicle, testified at trial. Palmer claims that in the absence of testimony from John Wilson's father or documentary evidence to support Wilson's right to a possessory interest, the State has failed to show that the vehicle was stolen.

We conclude that this contention lacks merit. Under NRS 205.271, "the word 'owner' [as used in NRS 205.273] means a person having the lawful use or control or the right to the use and control of a vehicle under a lease or otherwise for a period of 10 or more successive days." NRS 205.271. Here, Wilson testified that he had the lawful use of the vehicle pursuant to his father's permission as an agent of the record owner, Chrysler Corporation. Wilson further stated that he made a $300-per-month insurance payment to his father for the jeep. We conclude that this evidence was sufficient to establish that Wilson had a present right to possess the jeep and that he was an "owner" under NRS 205.271. Wilson's testimony that he did not give consent for anyone to drive the jeep is sufficient to show that the vehicle was stolen.

Finally, Palmer argues that the prosecutor made three comments, each constituting prosecutorial misconduct and warranting reversal under Sipsas v. State, 102 Nev. 119, 716 P.2d 231 (1986). We have carefully reviewed these comments and conclude that they do not constitute prosecutorial misconduct.

For the foregoing reasons, the judgment of the district court is hereby affirmed.