An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

IN THE SUPREME COURT OF THE STATE OF NEVADA

RAYMOND CHRISTOPHER SHARPE
A/K/A RAYMOND CHRISTOPHER
SHARP,
Appellants,
vs.
THE STATE OF NEVADA,
Respondent.

No. 62872

**FILED**

DEC 1 9 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of five counts of ex-felon-in-possession of a firearm. Eighth Judicial District Court, Clark County; Elissa F. Cadish, Judge.

In response to a domestic-battery call, police apprehended appellant Raymond Sharpe and arrested him. After placing him in custody, police searched his residence and found five firearms—a Ruger revolver, a CZ semiautomatic pistol, a Smith & Wesson semiautomatic pistol, an AR-15 semiautomatic assault rifle, and AK-47 style semiautomatic rifle. Sharpe was charged with coercion, first-degree kidnapping with the use of a deadly weapon resulting in substantial bodily harm, battery constituting domestic violence resulting in substantial bodily harm, burglary, living with a prostitute, living from the earnings of a prostitute, pandering with force, assault with a deadly weapon, various charges relating to stolen motor vehicles, and one count of possession of a firearm by an ex-felon for each weapon. The district court severed the ex-felon firearms counts and the remaining counts went to trial. Sharpe was found guilty as to all counts. His subsequent trial for possession of a

14-41421

firearm by an ex-felon also resulted in a determination of guilt for all five counts.[1]

On appeal, Sharpe argues that: (1) the district court abused its discretion by admitting evidence of the nature of his prior felony convictions in his trial on charges of ex-felon-in-possession of a firearm, (2) the district court erred by denying his motion to consolidate five counts of ex-felon-in-possession of a firearm on the ground that all of the firearms were in one location and possessed at the same time, (3) the district court erred by failing to intervene sua sponte to correct prosecutorial misconduct, (4) the State failed to present sufficient evidence to support three of the ex-felon-in-possession counts, (5) the ex-felon-in-possession convictions violate the Double Jeopardy Clause because Sharpe had already been tried on other offenses arising from the same incident and involving at least one of the same weapons, and (6) cumulative error warrants reversal. For the following reasons, we affirm the district court's judgment of conviction.

*Evidence of Prior Felony Convictions*

Sharpe argues that he was denied his federal constitutional due process rights when the district court failed to redact the judgments of conviction that were admitted to prove his ex-felons status.

To prove the offense of possession of a firearm by an ex-felon, the State must show that the defendant was convicted of a felony and that he possessed or exercised dominion and control over a firearm. NRS 202.360(1)(a); *Woodall v. State*, 97 Nev. 235, 236, 627 P.2d 402, 403 (1981).

---

[1]The parties are familiar with the facts, and we do not recount them further except as necessary to our disposition.

Both federal and Nevada courts have established that the State "is entitled to prove its case by evidence of its own choice, or, more exactly, that a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it." *Old Chief v. U.S.*, 519 U.S. 172, 186-87 (1997); *Edwards v. State*, 122 Nev. 378, 380-82, 132 P.3d 581, 583 (2006). However, this court, recognizing certain exceptions to this rule, has acknowledged limitations to a prosecutor's discretion. *Edwards*, 122 Nev. at 381, 132 P.3d at 583. A prosecutor's discretion to present his case is limited to proving "'the fact, instead of the nature, of a prior conviction where the effectiveness of the prosecutor's case is not impaired, and unnecessary and improper prejudice to the accused is avoided.'" *Id.* (quoting *Sanders v. State*, 96 Nev. 341, 343, 609 P.2d 324, 326 (1980)). Thus, this court concluded that when "a defendant is on trial for a single count of ex-felon-in-possession of a firearm, . . . the probative value of introducing a defendant's prior judgment of conviction solely to prove his ex-felon status is likewise unduly prejudicial if the defendant offers to stipulate to that status." *Id.* at 382, 132 P.3d at 584.

Here, Sharpe never stipulated to his status as an ex-felon, even though the defense acknowledged in opening arguments that "[t]his case is not about whether Mr. Sharpe is an ex-felon." Because of the lack of stipulation, the State was required to prove Sharpe's ex-felon status at trial. To prove that Sharpe was an ex-felon, the State sought to admit certified judgments of conviction for Sharpe's prior felonies, and Sharpe's counsel stated that Sharpe did not object. The district court, therefore, admitted the exhibits, and the jury learned that Sharpe had previously been convicted of several felonies, namely, assault with a deadly weapon,

pimping, receiving stolen property, perjury, and unlawful sexual intercourse. When the State referred to Sharpe's prior convictions in its closing arguments, Sharpe again did not object.

This court has the discretion to review unpreserved issues for plain error that affects a defendant's substantial rights. NRS 178.602. However, "the burden is on the defendant to show actual prejudice or a miscarriage of justice." *Green v. State*, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003).

Sharpe was likely prejudiced by the admission of his prior convictions, however, Sharpe's failure to stipulate to his status as an ex-felon required the State to prove his status as an ex-felon by presenting the certified judgments to show his prior convictions. Moreover, Sharpe failed to object to the admission of the judgments of conviction without redactions. Therefore, Sharpe was not denied his federal constitutional due process rights when the district court failed to redact his judgments of conviction that were admitted to prove his ex-felons status.

*Consolidation of Ex-Felon-in-Possession of a Firearm Charges*

Sharpe argues that his federal rights to due process and a fair trial were violated because he should have been charged with only a single offense. He contends that the Ninth Circuit Court of Appeals has clear law on this subject that is in accordance with the principles of multiplicity recognized by this court. *See United States v. Franklin*, 235 F.3d 1165 (9th Cir. 2000); *United States v. Szalkiewicz*, 944 F.2d 653 (9th Cir. 1991) (applying federal law). He argues that because the firearms were all stored at the same location, only one criminal charge can be alleged. *Id.*

This court has yet to address the "unit-of-prosecution" issue as it pertains to possession of firearms. *See Hughes v. State*, 116 Nev. 975, 12

P.3d 948 (2000) (affirming a judgment of conviction that involved multiple ex-felon-in-possession counts based on different guns in the defendant's possession at the same time, but not considering the unit of prosecution). "The unit of prosecution is the manner in which a criminal statute permits the defendant's conduct to be divided into discrete acts for prosecuting multiple offenses by establishing whether the conduct consists of one or more violations of a single statutory provision." 1 Crim. L. Def. § 68(d)(4) (2014).

> NRS 202.360(1) provides that
>
> 1. A person shall not own or have in his or her possession or under his or her custody or control any firearm if the person:
>> (a) Has been convicted of a felony in this or any other state, or in any political subdivision thereof, or of a felony in violation of the laws of the United States of America, unless the person has received a pardon and the pardon does not restrict his or her right to bear arms;
>>
>> . . . .
>
> A person who violates the provisions of this subsection is guilty of a category B felony and shall be punished by imprisonment in the state prison for a minimum term of not less than 1 year and a maximum term of not more than 6 years, and may be further punished by a fine of not more than $5,000.

"Firearm" is defined as including "any firearm that is loaded or unloaded and operable or inoperable." NRS 202.360(3)(b).

This court reviews issues of statutory construction and any constitutional overlay de novo. *Jackson v. State*, 128 Nev. ___, ___, 291 P.3d 1274, 1277 (2012). "[D]etermining the appropriate unit of prosecution presents an issue of statutory interpretation and substantive

law." *Id.* at ___, 291 P.3d at 1283 (internal quotation omitted). Understanding a statute's meaning starts with the statutory language, and this court does not look beyond that language unless there is an ambiguity. *State v. Lucero,* 127 Nev. ___, ___, 249 P.3d 1226, 1228 (2011). Statutes are interpreted as a whole with effect and meaning given to each word. *Blackburn v. State,* 129 Nev. ___, ___, 294 P.3d 422, 426 (2013).

We conclude that nothing in the statutory language of NRS 202.360 suggests that the Legislature contemplated that one violation would encompass all the firearms in the felon's possession. The statute uses the singular language "any firearm" rather than the plural language any "firearms." This language is plain and unambiguous: each firearm the ex-felon possesses constitutes a separate violation of the statute.

Here, Sharpe possessed five distinct firearms. Therefore, this Court affirms the five charges of felon-in-possession of a firearm because each charge involved a different firearm.

*Prosecutorial Misconduct*

Sharpe argues that the State violated his due process and fair trial rights by committing multiple instances of prosecutorial misconduct.

A party is generally required to object to prosecutorial misconduct at trial because this then allows the district court to rule on the issue, admonish the prosecutor, and/or instruct the jury. *Valdez v. State,* 124 Nev. 1172, 1190, 196 P.3d 465, 477 (2008). "When an error has not been preserved, this court employs plain-error review." *Id.* This court will only overturn a conviction if "the misconduct is 'clearly demonstrated to be substantial and prejudicial.'" *Miller v. State,* 121 Nev. 92, 99, 110 P.3d 53, 58 (2005) (quoting *Sheriff v. Fullerton,* 112 Nev. 1084, 1098, 924 P.2d 702, 711 (1996)).

*Allegations of domestic violence and officer safety*

Sharpe contends that the prosecutor's references to alleged domestic violence and officer safety were unnecessary because Sharpe had already conceded that he was an ex-felon. He further contends that these references prejudiced him because they served to heighten the jury's perception of him as being a dangerous criminal who needed to be incarcerated. Sharpe argues that the questioning was clearly designed to improperly inflame the jury's passions, fears, and vulnerabilities in violation of due process.

*References to domestic violence*

Sharpe takes issue with repeated references, through the State's witnesses, to the fact that the original call to police dispatch was for domestic violence.

Prior to trial and any references to domestic violence, the State sought approval from the court to inform the jury that the officers were responding to a domestic violence call. The defense acquiesced to the request and the district court allowed the references. At trial, the State then mentioned, through five witnesses, that the call to the police was for a domestic violence incident. Because of his acquiescence and failure to object, Sharpe must demonstrate that this was plain error. *See* NRS 178.602; *Woodall*, 97 Nev. at 236, 627 P.2d at 403. Because the reason for the call was relevant to explaining the circumstances, and Sharpe failed to demonstrate "actual prejudice or a miscarriage of justice," these references did not constitute plain error. *Green v. State*, 119 Nev. at 545, 80 P.3d at 95.

*References to officer safety*

Sharpe also takes issue with the prosecutor eliciting testimony from Officer Powell about officer safety, the need for officer safety, and methods by which officer safety was ensured as irrelevant and an attempt to heighten the jury's perception of Sharpe as being dangerous.

When a person is accused of being an ex-felon-in-possession of a firearm, the only evidence admissible at that person's trial is evidence relevant to prove his status as an ex-felon and evidence that he possessed the firearm at issue. NRS 202.360(1)(a); NRS 48.015; NRS 48.025. A well-established caveat to that rule is that otherwise relevant evidence is nevertheless inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury." NRS 48.035(1). Additionally, under NRS 48.045(2),

> [e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Here, Sharpe challenges Officer Powell's testimony concerning how he met Sharpe and his subsequent search of the residence. Officer Powell testified that he went to assist with the detainment of a suspect who was not complying with officers' orders. He stated that noncompliance is a safety issue. When Officer Powell arrived at the location, he observed two officers giving verbal commands, telling the suspect, who was standing in front of a vehicle facing the officers, to face the vehicle so that they could take him into custody. Officer Powell stated that he got out of his police vehicle, drew his taser, and pointed it at the

suspect who then decided to comply with the requests to face the vehicle. Officer Powell identified the suspect as Sharpe. Once Sharpe was taken into custody and was no longer a threat, Officer Powell went to the residence to conduct a protective sweep to determine whether there was anyone else inside the house. Inside, Officer Powell discovered an AR-15 semiautomatic assault rifle lying on the stairwell landing half way up the stairs. He secured the gun while wearing gloves and moved it downstairs by the back door for officer safety purposes. Ultimately, he found nobody in the home. Officer Powell then determined that the scene was safe and that he was no longer needed.

At no time did Sharpe object to any of this testimony. Accordingly, this court's review is limited to assessing whether plain error affected Sharpe's substantive rights. NRS 178.602. Sharpe bears the burden "to show actual prejudice or a miscarriage of justice." *Green*, 119 Nev. at 545, 80 P.3d at 95.

Sharpe has failed to meet this burden. With the exception of the references to noncompliance and the need to pull a taser, Officer Powell's testimony simply explained how he secured the premises to determine if anyone else was present, why he felt the need to secure the firearms, and why he moved the assault rifle. This evidence was relevant to whether Sharpe had constructive possession over the firearms and was clearly admissible. We agree that the testimony about Sharpe's noncompliance with the officers and the need to point a taser at him was not relevant to whether Sharpe was an ex-felon-in-possession of a firearm. It was also not admissible under NRS 48.045(2) to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Instead, this testimony was impermissible

"[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." NRS 48.045(2). But, in light of the evidence adduced at trial that Sharpe was an ex-felon and in constructive possession of the firearms, we conclude that Sharpe fails to show actual prejudice.

### Elicitation of legal conclusions

Sharpe argues that the prosecutor improperly elicited legal conclusions from police officers concerning papers found at the residence. He contends that the officers' testimony constituted legal conclusions and opinions improperly elicited to prove the only issue in dispute at the trial: that he constructively possessed the firearms found in the residence.

This court reviews the district court's admission of opinion testimony for abuse of discretion. *Watson v. State*, 94 Nev. 261, 264, 578 P.2d 753, 756 (1978). A lay witness's testimony "in the form of opinions or inferences is limited to those opinions or inferences" that are "[r]ationally based on the perception of the witness" and "[h]elpful to a clear understanding of the testimony of the witness or the determination of a fact in issue." NRS 50.265. And testimony is "not objectionable because it embraces an ultimate issue to be decided by the trier of fact." NRS 50.295.

Here, Sharpe takes issue with testimony provided by the police. On the first day of Sharpe's trial, the prosecutor posed the following questions, which Detective Mark Menzie answered:

> Q. . . . . did you seek to recover certain items within the residence that would tend to establish a possessory interest in the residence and or the firearms?
>
> A. Yes.
>
> Q. And is that common to do?
>
> A. Yes, it is.

Q. And what types of items are we talking about?

A. Mail, photographs, addressed envelopes; anything documenting a person that establishes dominion control over a residence, or at least shows possession, or residing at a certain residence. That would be written.

Q. And did you find items tending to establish a possessory interest?

A. I did.

Q. And whose name were those items in?

A. It would be Raymond Sharpe. And I also discovered the alias Rashaad Shelton.

Similar testimony was elicited from Detective Aaron Fink at trial:

Q. And were you also looking for paperwork in a specific individual's name?

A. Yes.

Q. And who was that?

A. Raymond Sharpe.

. . . .

Q. Why specifically do you look for paperwork such as these items depicted in these four photographs?

A. We refer to them as possessory items that links [sic] a person to these items as possession; that typically if they live in that home, they're going to have their name on it and address; something linking to the fact that they live there or they belong with the property.

Q. And why is that important when you're investigating firearms offenses?

A. Because it ties the people together. It ties them -- if they do live there and have their name to that residence, firearms are there, it's a good chance that it belongs to them.

During the next day of trial, the following testimony was elicited from Detective Christopher Baughman:

Q. The search warrant that you obtained, the second search warrant that was executed at that residence, it authorized the search for firearms and items tending to show a possessory interest in the house; it that correct?

A. Yes.

. . . .

Q. Okay. And why do you search for items of possessory interest?

A. Just to establish whose home it is; who has possession of the home.

Q. And who has control over the property?

A. Yes.

Q. When you are searching for items tending to show a possessory interest, what types of items are you looking for?

A. Could be things like mail, bills, receipts, ID, licenses.

Q. And why is it that you all look for those types of items to establish control over that -- over the property?

A. Well, because we don't know -- we need to know whose property it is, depending on what we find inside of it.

Q. Okay. So, is it your belief that people don't leave important things like bills, bank statements, things of that nature at a home they don't have any control over?

A. Correct.

. . . .

Q. While on scene, did you in fact recover several items that you believed showed control over the property?

A. I did.

Q. And were those in the names of Raymond Sharpe?

A. They were.

The statements made by the LVMPD detectives consisted of lay witness testimony "in the form of opinions or inferences" that assisted the jury by discussing the ultimate issue of possession and how constructive possession may be established. NRS 50.265. These statements did not cross the line into impermissibly telling the jury what result to reach. *United States v. Duncan,* 42 F.3d at 97, 101 (2d Cir. 1994). Accordingly, the elicited testimony was proper.

*Reference to facts not in evidence*

Sharpe argues that the prosecutor's reference during closing argument rebuttal to a bloody towel was an impermissible reference to facts not in evidence that constituted reversible prosecutorial misconduct.

During closing argument, the prosecution argued that "State's Exhibit 11 . . . is a towel with blood on it. Is it possible he wiped blood off a gun? Absolutely." Defense counsel objected, stating that "this assumes facts in evidence. There was no evidence that there were any blood -- any towel." The prosecution replied that

> I'm staring at State's Exhibit 11 with a towel -- I'm sorry, apparent blood.
>
> THE COURT: All right, right.
>
> MS. DEMONTE: We'll call it that.
>
> THE COURT: Okay. Go on.

This argument did not amount to prosecutorial misconduct. "Counsel is allowed to argue any reasonable inferences from the evidence the parties have presented at trial." *Jain v. McFarland,* 109 Nev. 465, 476, 851 P.2d 450, 457 (1993). As evidenced by the exchange, the

inference drawn by the prosecution was supported by evidence that had been admitted at trial. Accordingly, there was no error.

*Sufficiency of the evidence to support three counts of ex-felon-in-possession-of-a-firearm*

The standard of review for a challenge to the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Rose v. State*, 123 Nev. 194, 202, 163 P.3d 408, 414 (2007) (internal quotations omitted). In rendering its decision, the jury is tasked with "assess[ing] the weight of the evidence and . . . credibility of witnesses." *Id.* at 202-03, 163 P. 3d at 414 (internal quotations omitted). A jury is also free to rely on both direct and circumstantial evidence in returning its verdict. *Wilkins v. State*, 96 Nev. 367, 374, 609 P.2d 309, 313 (1980). This court has consistently "held that circumstantial evidence alone may sustain a conviction." *Deveroux v. State*, 96 Nev. 388, 391, 610 P.2d 722, 724 (1980).

Because Sharpe was only in actual possession of two of the five firearms, the State was required to demonstrate constructive possession of three of the firearms at issue here—the Ruger, the CZ, and the AR-15.

"This court has defined constructive possession as both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons." *Batin v. State*, 118 Nev. 61, 65-66, 38 P.3d 880, 883 (2002) (internal quotations omitted). This requires more than a showing of mere access to the property; it requires evidence of dominion and control. *Id.* at 66, 38 P.3d at 883-84; *see also Palmer v. State*, 112 Nev. 763, 769, 920 P.2d 112, 115

SUPREME COURT
OF
NEVADA

(O) 1947A

14

(1996) (pointing out that in narcotics possession cases, "possession may be imputed when the contraband is found in a location which is immediately and exclusively accessible to the accused and subject to [his] dominion and control" and stating that this language is instructive on the issue of possession of stolen property (internal quotations omitted)). Accordingly, "[t]he accused has constructive possession only if she maintains control or a right to control the contraband." *Glispey v. Sheriff, Carson City*, 89 Nev. 221, 223, 510 P.2d 623, 624 (1973). Dominion and control may be evidenced "by circumstantial evidence and reasonably drawn inferences." *Kinsey v. Sheriff, Washoe Cnty.*, 87 Nev. 361, 363, 487 P.2d 340, 341 (1971).

We conclude that the State presented sufficient evidence that Sharpe had a right to control the firearms charged in counts 14 (the Ruger), 15 (the CZ), and 17 (the AR-15). The evidence in this case was not limited to mere presence. *See Konold v. Sheriff, Clark Cnty.*, 94 Nev. 289, 290, 579 P.2d 768, 769 (1978) (determining that a small amount of marijuana found in a pipe located in a room where several persons were present was insufficient by itself to establish constructive possession); *Glispey*, 89 Nev. at 224, 510 P.2d at 624-25 (concluding that there was no constructive possession of marijuana stashed in a paper towel receptacle in a rest room when two other women accessed the rest room). The surrounding circumstances support the reasonable inference that the firearms were within Sharpe's dominion and control. *See Palmer*, 112 Nev. at 769, 920 P.2d at 115 (concluding that Palmer was in constructive possession of the vehicle, despite not having the keys and no one having seen him drive the vehicle, because a friend saw him inside the vehicle

dismantling the convertible top and an officer saw him in and around the vehicle removing parts).

Sharpe independently owned the residence where the firearms were found. The State presented documentary evidence retrieved from the residence indicating that Sharpe exercised dominion and control over the premises. While Sharpe asserts that another individual, Alicia Grundy, also lived in the residence with him, this was not established in the record.[2] Moreover, Officer Kovacich heard arguing between a male and a female inside the residence. Grundy identified the male voice as belonging to Sharpe. Grundy repeatedly told Officer Kovacich that Sharpe had a gun. She also explained that her face was bleeding because Sharpe had pistol-whipped her with a handgun. Grundy later told Officer Kovacich that Sharpe had four or five guns in the house.

Furthermore, none of the firearms or magazines contained a DNA profile consistent with Grundy. However, DNA consistent with Sharp was found on the Smith & Wesson. Sharpe's palm print was also found on the Norinco.

As to the specific firearms at issue—the Ruger, the CZ, and the AR-15—each had additional indicia of Sharpe's dominion and control.

First, the Ruger revolver was discovered inside a sock in a suitcase located in the master bedroom, which was Sharpe's bedroom. Beneath the Ruger was an envelope addressed to AIO c/o R. Shelton at 8795 Gagnier, Las Vegas, Nevada, the residential address to which police

---

[2]There is no requirement that dominion and control be exclusive. *See Maskaly v. State*, 85 Nev. 111, 114, 450 P.2d 790, 792 (1969) ("Two or more persons may have joint possession of a narcotic if jointly and knowingly they have its dominion and control.").

were originally dispatched for the domestic violence incident. Sharpe owned AIO Motoring and operated under the known alias Rashaad Shelton.

Second, the police found the CZ semiautomatic pistol in a dresser draw next to a bed in the master bedroom. On the dresser, police also found paperwork listing the names AIO Motoring and Rashaad.

And, third, the AR-15 semiautomatic assault rifle was discovered lying on the stairwell landing. While police did not find any DNA or fingerprint evidence on the firearm, it is notable that Sharpe mistakenly attempted to load the Norinco rifle with the AR-15 rifle's ammunition. This was evidenced by Sharpe's palm print being found on the Norinco. This gives rise to the reasonable inference that because Sharpe had dominion and control over the AR-15's ammunition, he had dominion and control over the AR-15 as well.

This evidence was sufficient to establish that Sharpe, rather than Grundy, possessed the firearms found by the police. *See Deveroux v. State*, 96 Nev. at 391, 610 P.2d at 724 (stating that the jury may rely on circumstantial evidence standing alone in returning its verdict).

*Double Jeopardy Clause*

Sharpe argues that the State violated his federal double jeopardy right by requiring him to stand trial for possession of a firearm by an ex-felon when the facts underlying the charge had been decided in his earlier trial. He contends that the first trial established that he possessed the guns that were found to have been used to commit the crimes and that he was thus placed in jeopardy twice for the same acts.

This court reviews de novo issues of double jeopardy. *Jackson v. State*, 128 Nev. ___, ___, 291 P.3d 1274, 1277 (2012). "The Double

Jeopardy Clause protects against three abuses: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *Id.* at ___, 291 P.3d at 1278.

Here, Sharpe argues that possession of a firearm by an ex-felon (NRS 202.360) is included in the charges for felony first-degree kidnapping with the use of a deadly weapon resulting in substantial bodily harm (NRS 200.310, 200.320, 193.165); felony battery constituting domestic violence with use of a deadly weapon resulting in substantial bodily harm (NRS 200.481); and felony assault with a deadly weapon (NRS 200.471). We disagree.

"To determine whether two statutes penalize the same offence," this court "inquires whether each offense contains an element not contained in the other; if not, they are the same offence and double jeopardy bars additional punishment and successive prosecution." *Jackson*, 128 Nev. at ___, 291 P.3d at 1278 (citing *Blockburger v. United States*, 284 U.S. 299 (1932)).

Possession of a firearm by ex-felon requires (1) possession or control of a firearm (2) by a person previously convicted of a felony. NRS 202.360(1)(a). The requirement that the person have been previously convicted of a felony is an additional element of NRS 202.360 that is not included in the other offences.

First-degree kidnapping with the use of a deadly weapon resulting in substantial bodily harm requires, in pertinent part, a willful seizure, confinement, or carrying away of another person to receive a ransom or reward or to commit "sexual assault, extortion or robbery upon or from the person, or for the purpose of . . . inflicting substantial bodily

SUPREME COURT
OF
NEVAOA

(O) 1947A

harm upon the person." NRS 200.310(1). Additionally, the kidnapped person must "suffer substantial bodily harm during the act of kidnapping or the subsequent detention." NRS 200.320(1). Lastly, the perpetrator must use "a firearm or other deadly weapon." NRS 193.165(1).

Battery constituting domestic violence with use of a deadly weapon resulting in substantial bodily harm requires a "willful and unlawful use of force or violence upon the person of another . . . with the use of a deadly weapon. . . . [resulting in] [s]ubstantial bodily harm to the victim results or the battery is committed by strangulation." NRS 200.481(1)(a),(2)(e)(2).

Assault with a deadly weapon requires "[u]nlawfully attempting to use physical force against another person; or . . . [i]ntentionally placing another person in reasonable apprehension of immediate bodily harm. . . with the use of a deadly weapon or the present ability to use a deadly weapon." NRS 200.471(1)(a),(2)(b).

Sharpe's conviction for ex-felon-in-possession of a firearm required proof that he was an ex-felon at the time of possession. NRS 202.360(1)(a). This fact was not required to prove the kidnapping, battery, or assault crimes. NRS 200.310(1); NRS 200.320(1); NRS 193.165(1); NRS 200.481(1)(a),(2)(e)(2); NRS 200.471(1)(a),(2)(b). Moreover, kidnapping, battery, and assault each required proof of additional or different facts than are required for ex-felon-in-possession of a firearm. The kidnapping charge required proof that Sharpe abducted a person and required the infliction of substantial bodily harm. NRS 200.310(1); NRS 200.320(1); NRS 193.165(1). The battery charge required "willful and unlawful use of force or violence" and that substantial bodily harm to the victim resulted. NRS 200.481(1)(a),(2)(e)(2). The assault charge required proof that

Sharpe either placed the victim in reasonable apprehension of immediate bodily harm or that he unlawfully attempted to use physical force against the victim. NRS 200.471(1)(a),(2)(b). We therefore conclude that Sharpe's convictions did not violate double jeopardy.

*Cumulative error*

Sharpe argues that his federal constitutional right to a fair trial was violated by the cumulative effect of the numerous significant errors that he claims occurred during his trial. He asserts that the issue of culpability was not close given the insufficient evidence. Also, he argues, the gravity and character of the errors were severe because they occurred at each critical stage of the litigation. Lastly, he contends that the crime of possession of firearms by an ex-felon is not serious. Sharpe argues that because the evidence of guilt was not overwhelming, the verdicts would not have been the same in the absence of the multiple errors. We disagree.

Cumulative error may deny a defendant a fair trial even if the errors, standing alone, would be harmless. *Valdez v. State*, 124 Nev. 1172, 1195, 196 P.3d 465, 481 (2008). "When evaluating a claim of cumulative error, we consider the following factors: (1) whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of the crime charged." *Id.* (internal quotations omitted). However, a defendant is not entitled to a perfect trial, merely a fair one. *Ennis v. State*, 91 Nev. 530, 533, 539 P.2d 114, 115 (1975).

The only substantiated error at Sharpe's trial—the discussion about Sharpe's noncompliance with the officers and the purported need to point a taser at him—does not warrant reversal. Thus, Sharpe is not entitled to a new trial based on cumulative error.

Accordingly, we

ORDER the judgment of conviction AFFIRMED.

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Cherry

cc:    Hon. Elissa F. Cadish, District Judge
Donald J. Green
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(0) 1947A