# IN THE SUPREME COURT OF THE STATE OF NEVADA

MARIANN JASMINE HARRIS,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 78113

FILED

JUL 3 1 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of first-degree murder and two counts of child abuse and neglect. Eighth Judicial District Court, Clark County; David M. Jones, Judge.

Appellant Mariann Harris was arrested and tried for murder and child abuse and neglect with use of a deadly weapon of 14-month-old D.J., and two counts of child abuse and neglect involving Harris's children, R.F. and M.F. A jury found Harris guilty of all charges.[1] Prior to sentencing, the district court granted Harris's motion for a new trial. Following the State's appeal, we determined that the district court abused its discretion by granting Harris a new trial, and we reversed and remanded the matter to the district court for sentencing. *See State v. Harris*, Docket No. 64913 (Order of Reversal and Remand, May 8, 2017) (hereinafter Remand Order). The district court sentenced Harris to serve an aggregated prison term totaling 22 years to life.

---

[1]While the jury found Harris guilty of all counts, the district court granted Harris's post-trial motion to merge the murder count with the child abuse and neglect with use of a deadly weapon count based on double jeopardy.

20-28015

On appeal, Harris argues that (1) the district court improperly treated the two counts of child abuse and neglect as felonies under NRS 200.508(1) rather than gross misdemeanors pursuant to NRS 200.508(2)(b)(1), and that the State failed to provide sufficient evidence to support her convictions for these counts; (2) the State improperly vouched for Armani Foster, a State witness; (3) the State improperly commented on Harris's outburst made during trial; (4) the State violated Harris's Fifth Amendment right to remain silent by commenting on her failure to appear for a police interview and a CPS hearing when Harris did so on the advice of counsel;(5) the State committed prosecutorial misconduct by representing Harris's failures to appear as evidence of guilt; (6) the State committed prosecutorial misconduct by violating the district court's ruling regarding the jury instruction on flight, and (7) cumulative error warrants reversal. Having reviewed Harris's contentions and for the reasons discussed below, we affirm the judgment of conviction.

*Child abuse and neglect counts*

Harris argues that the district court erred by denying her motion to adjudicate and sentence the abuse and neglect convictions as gross misdemeanors, contending that it is unclear whether the jury convicted her under NRS 200.508(1)(b)(1), a felony, or NRS 200.508(2)(b)(1), a gross misdemeanor. *See* NRS 200.508(1)(b)(1) (detailing that "[a] person who willfully causes a child . . . to be placed in a situation where the child may suffer physical pain or mental suffering as the result of abuse or neglect" commits a category B felony); NRS 200.508(2)(b)(1) (explaining that a person statutorily responsible for a child's safety "who permits or allows that child . . . to be placed in a situation where the child may suffer physical pain or mental suffering as a result of abuse or neglect" commits a

SUPREME COURT
OF
NEVADA

(O) 1947A

gross misdemeanor). Harris relies on *Ramirez v. State* to support her argument. 126 Nev. 203, 209-10, 235 P.3d 619, 623-24 (2010) (granting the defendant a new trial, in part, because the State failed to articulate the predicate felony supporting the second-degree-felony-murder conviction by including language from both NRS 200.508(1) and NRS 200.508(2) on the charging document and pertinent jury instruction).

We disagree with Harris, as she misapplies our holding in *Ramirez*. There, we clarified that "NRS 200.508(1) addresses scenarios where the person charged under the statute directly committed the harm." 126 Nev. at 209, 235 P.3d at 623. However, "NRS 200.508(2), by contrast, addresses situations where a person who is responsible for the safety and welfare of a child fails to take action to protect that child from the abuse or neglect of another person or source." *Id.* In *Ramirez*, it was unclear whether the jury convicted the defendant of second-degree felony murder under NRS 200.508(1) or NRS 200.508(2) because the jury could have determined that the defendant's boyfriend killed the victim based on conflicting evidence presented at trial. *Id.* at 209-10, 235 P.3d at 623-24. Because second-degree murder requires an immediate and direct causal connection between the defendant's act and the victim's death, we determined that NRS 200.508(2) could not support the defendant's conviction for second-degree felony murder and granted the defendant a new trial based on this ambiguity. *Id.*

The circumstances surrounding Harris's conviction are distinguishable from those in *Ramirez*. Here, the State charged Harris with first-degree murder of D.J., and the jury convicted Harris of the same. The State also pursued charges of child abuse and neglect involving R.F. and M.F., maintaining that they witnessed Harris beat and kill D.J. The jury likewise convicted Harris of these crimes. Although the indictment

contained language from both subsections (1) and (2) of NRS 200.508, Harris's murder conviction leaves no doubt that Harris, as "the person charged under the statute[,] directly committed the harm" to R.F. and M.F under NRS 200.508(1)(b)(1). *See Ramirez*, 126 Nev. at 209, 235 P.3d at 623. In addition, the indictment specified that it accused Harris of "CHILD ABUSE & NEGLECT (Felony – NRS 200.508)." Thus, we conclude that the district court properly treated the child abuse and neglect counts as felonies pursuant to NRS 200.508(1)(b)(1).

Relatedly, Harris argues that the State presented insufficient evidence to support her child abuse and neglect convictions. We disagree. When reviewing a challenge to the sufficiency of evidence supporting a criminal conviction, this court considers "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This court will not disturb a verdict supported by substantial evidence. *Id.* "Circumstantial evidence alone may support a judgment of conviction." *Collman v. State*, 116 Nev. 687, 711, 7 P.3d 426, 441 (2000).

To sustain a conviction under NRS 200.508(1), the State needed to prove beyond a reasonable doubt that Harris placed R.F. and M.F "in a situation where [they] *may* [have] suffer[ed] physical pain or mental suffering as the result of abuse or neglect"—not that they did in fact so suffer. *See* NRS 200.508(1) (emphasis added). Harris concedes on appeal that R.F. and M.F. were in the apartment during the time that D.J. was beaten to death. Furthermore, Harris does not challenge the sufficiency of the evidence supporting her first-degree murder conviction. Therefore, we

SUPREME COURT
OF
NEVADA

(O) 1947A

4

hold that sufficient evidence existed for a reasonable jury to conclude beyond a reasonable doubt that Harris beat and killed D.J. in the apartment with R.F. and M.F. present, and that R.F. and M.F. "may [have] suffer[ed] physical pain or mental suffering as the result." NRS 200.508(1).

*Witness vouching*

Harris argues that the State improperly vouched for Armani Foster through the testimony of Detective Boucher and Detective Kisner. *See Anderson v. State*, 121 Nev. 511, 516, 118 P.3d 184, 187 (2005) ("A prosecutor may not vouch for the credibility of a witness . . . ."). Specifically, Harris maintains that the detectives improperly testified "that Foster acted appropriately during" police interviews by responding to their accusations with anger and animosity. Because Harris did not object to the detectives' testimony, we review this claim for plain error. *See Martinorellan v. State*, 131 Nev. 43, 48, 343 P.3d 590, 593 (2015) (holding that this court reviews all unpreserved errors "for plain error without regard as to whether they are of constitutional dimension"). Having considered these statements in context, we conclude that the detectives' testimony reflected their opinions based on professional experience, and that the State did not vouch for Foster. Therefore, there was no plain error.

*Harris's in-court outburst*

Harris argues that the State committed misconduct by referencing Harris's outburst at trial during closing arguments to establish consciousness of guilt. During Detective Boucher's testimony regarding his initial interview with Harris at the crime scene, Harris interjected, "She died and you didn't tell me. Like what do you mean? What do you mean? You didn't tell me, you didn't have the heart to tell me." Neither party objected to the outburst, nor did the district court otherwise address it.

Then, during rebuttal argument, the State referenced this outburst by stating, "Remember the outburst: Oh, how dare you, Detective, not tell me." The State then argued that other evidence contradicted Harris's assertion that she was unaware of D.J.'s death when she first spoke with Detective Boucher.

As Harris did not object to the prosecutor's comment, we likewise review this contention of misconduct for plain error. *See Martinorellan*, 131 Nev. at 48, 343 P.3d at 593. Because no prosecutorial misconduct occurred, we conclude that Harris fails to demonstrate plain error, *see Jeremias v. State*, 134 Nev. 46, 50, 412 P.3d 43, 48 (explaining that the appellant must demonstrate plain error, "meaning that it is clear under current law from a casual inspection of the record[,]" for this court to remedy a forfeited error), *cert. denied*, ___ U.S. ___, 139 S. Ct. 415 (2018).

*Fifth Amendment violation and prosecutorial misconduct allegations*

Harris next maintains that the State (1) violated her Fifth Amendment right to remain silent by commenting on her failure to appear for a police interview and a CPS hearing when Harris did so on the advice of counsel, (2) committed prosecutorial misconduct by representing Harris's failures to appear as evidence of guilt, and (3) committed prosecutorial misconduct by violating the district court's ruling regarding the jury instruction on flight. The State answers that the law-of-the-case doctrine bars these arguments, as this court considered the same during the State's earlier appeal. *See Hall v. State*, 91 Nev. 314, 315-16, 535 P.2d 797, 798-99 (1975) (explaining that the law-of-the-case doctrine provides that the law announced by this court on appeal dictates "the law of the case on all subsequent appeals in which the facts are substantially the same[,]" and operates to bar the reconsideration of claims previously decided on their

merits by this court) (internal quotation marks omitted)). We agree with the State.

First, we already determined that Harris did not affirmatively invoke her Fifth Amendment right. *See* Remand Order at *5 ("[E]ven a reasonable inference whereby 'one can circumstantially say that [Harris] lawyered up,' as noted by the district court, falls short of the substantial evidence necessary to show that Harris affirmatively invoked her Fifth Amendment right." (second alteration in original)); *see also* U.S. Const. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself . . . ."); Nev. Const. art. 1, § 8 ("No person shall . . . be compelled, in any criminal case, to be a witness against himself . . . .").

Despite Harris's contention that attorney Craig Mueller's testimony at an evidentiary hearing before sentencing establishes otherwise, we conclude that Mueller's testimony that he spoke with detectives about the existence of a warrant falls short of the substantial evidence necessary to conclude that Harris affirmatively invoked her Fifth Amendment right through counsel. *See* Remand Order at *4-5 (explaining that an individual may invoke her Fifth Amendment right personally or though counsel, "but there is a difference between an affirmative representation of a client's right by her counsel and speculation by the district court" (citing *Palmer v. State*, 112 Nev. 763, 767, 920 P.2d 112, 114 (1996))). Because Mueller's testimony does not constitute new or different evidence affecting this court's prior conclusion that Harris did not invoke her Fifth Amendment right, we hold that the law-of-the-case doctrine bars reconsideration of this claim. *See Rippo v. State*, 134 Nev. 411, 427-28, 423 P.3d 1084, 1100-01 (2018) (explaining that the law-of-the-case doctrine may

not apply to bar the relitigation of claims where the appellant provides substantially new or different evidence).

Second, based on our conclusion that the State did not violate Harris's Fifth Amendment right, we previously determined that the State did not commit prosecutorial misconduct by representing Harris's failures to appear as evidence of guilt. Remand Order at *5-6. Moreover, we reasoned that Harris's failures to appear were admissible as *conduct* evidencing consciousness of guilt, as opposed to silence that may implicate the Fifth Amendment. *Id.* at *5 (citing *Santillanes v. State*, 104 Nev. 699, 701, 765 P.2d 1147, 1148 (1988) (determining that a jury may reasonably infer the defendant's consciousness of guilt from the defendant's *conduct* of failing to attend a previously agreed-upon meeting with police)). Because Harris now seeks to reargue the merits of our prior holding, the law-of-the-case doctrine bars this argument as well.

Third, we already determined that the State did not violate the district court's ruling regarding the jury instruction on flight, such that no prosecutorial misconduct occurred. *Id.* at *7-8. Specifically, we recognized that the State commented on Harris's failure to appear at the scheduled police interview and her apparent attempt to conceal her face with a newspaper to elude arrest in its opening statement. *Id.* at *6-7. However, we further determined that the district court took the State's proposed jury instruction on flight under submission prior to opening statements without opposition, and that the district court did not rule on the instruction until much later. *Id.* at *7. Thus, we concluded that the State abided by the district court's ruling not to argue flight following Jill Hookstra's testimony regarding the CPS hearing. *Id.* at *7-8. As we previously addressed this

SUPREME COURT
OF
NEVADA

(O) 1947A

argument, the law-of-the-case doctrine likewise bars Harris's attempt to relitigate this issue on appeal.

*Cumulative error*

Finally, Harris argues that cumulative error warrants reversal. "The cumulative effect of errors may violate a defendant's constitutional right to a fair trial even though errors are harmless individually." *Hernandez v. State*, 118 Nev. 513, 535, 50 P.3d 1100, 1115 (2002). Having found no errors on the part of the district court, we conclude that this argument lacks merit. Accordingly, we

ORDER the judgment of conviction AFFIRMED.

_____, J.
Parraguirre

_____, J.
Hardesty

_____, J.
Cadish

cc:     Hon. David M. Jones, District Judge
        Clark County Public Defender
        Attorney General/Carson City
        Clark County District Attorney
        Eighth District Court Clerk